United States Court of Appeals,

Fifth Circuit.

No. 92-2754.

James T. McCULLOUGH, et al., Plaintiffs,

Federal Deposit Insurance Corporation, Plaintiff-Appellant,

v.

FIDELITY & DEPOSIT COMPANY, Defendant-Appellee.

Sept. 16, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC) filed a declaratory judgment action against Fidelity and Deposit Company of Maryland (F & D) to determine whether F & D provided coverage under a directors' and officers' liability policy. The district court found no coverage under F & D's policy and granted summary judgment to F & D. Because the insured failed to give F & D adequate notice to trigger coverage under the "claims made" insurance policy, we affirm.

I.

F & D issued four directors' and officers' (D & O) liability policies to four affiliate banks, including Harris County Bankshares, Inc. and three of its subsidiaries (banks). The policy covers claims made against the insured officers and directors if the required notice is given to the insurer during the policy period. This coverage is expanded by Section 6(a) of the policy to cover claims made after expiration of the policy term if the insured gives F & D certain written notice during the policy period of potential claims. Section 6 of the policy provides, in pertinent part:

(a) If during the policy period, or during the extended discovery period if the right is exercised by the Bank or the Directors and Officers in accordance with Clause 2, the Bank or the Directors and Officers shall:

(1) receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers, or any of them, responsible for a specified Wrongful Act; or

(2) become aware of any act, error, or omission which may subsequently give rise to a claim being made against the Directors and Officers, or any of them, for a specified Wrongful Act;

and shall during such period give written notice thereof to the Company as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors and Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the Policy Year or the extended discovery period in which such notice was first given.

(emphasis added).

The summary judgment evidence focused on information the banks furnished F & D about their lending activities. The parties disagreed about whether that information was adequate to put F & D on notice of a potential claim under § 6 of the policy.

As requested by F & D, the banks provided F & D with June 1984—March 1985 Call Reports[1] that described increasing loan losses and delinquencies. In conjunction with the 1985 renewal of the policies, the banks provided F & D a 1984 annual report. Footnote M of that report referred to the issuance of a cease and desist order to one of the subsidiaries by its primary regulator, the Office of the Comptroller of the Currency (OCC). The bank did not send the order itself.

F & D continued to express concern about the banks' financial condition and continued to request Call Reports and other information. In one of F & D's letters, they expressed concern about the banks' "problem with the Feds." In September 1985, in response to the increasing loan losses, F & D informed the banks that it intended to cancel their policies mid-term, effective October 9.

After a merger of the subsidiary banks, the OCC declared the bank insolvent in February 1988 and declared the FDIC as Receiver. FDIC sued the banks' directors and officers for improperly or illegally making, administering, or collecting loans.[2] F & D denied coverage to the officers and directors under the D & O policies. FDIC then filed its declaratory judgment action against F & D, seeking a determination that F & D provided coverage under the D & O liability policies.

In the declaratory judgment action, FDIC sought to inspect F & D's underwriting files and to

---

[1] A Call Report is a quarterly report of financial condition that each insured institution is required to furnish its primary regulator.

[2] FDIC v. Bacarisse, No. 91-0461 (S.D.Tex. filed Feb. 26, 1991).

depose F & D representatives about claims F & D anticipated against directors and officers. F & D asked for a protective order pending disposition of its motion to dismiss the action, later converted to a motion for summary judgment. FDIC, on the other hand, argued that Fed.R.Civ.P. 56(f) required the court to postpone the motion for summary judgment until discovery was completed. The district court granted FDIC's request for limited discovery and denied F & D's summary judgment motion.

After F & D filed a motion for reconsideration, the court found that information revealing F & D's subjective interpretation of the documents it received was irrelevant. The court found that FDIC had failed to show that F & D received written notice of a potential claim under § 6(a)(2) of the policy, and on reconsideration it entered final judgment for F & D. FDIC timely appealed.

II.

FDIC raises two issues on appeal. First, they argue that a genuine issue of fact exists regarding whether, pursuant to § 6(a)(2) of the "claims made" policy, they provided F & D sufficient written notice of potential claims during the policy period. Second, they argue that the court abused its discretion in refusing to allow them to conduct additional discovery before granting F & D's motion for summary judgment.

A.

The parties first contest the type of notice the policy requires the banks to give to F & D. F & D contends that the policy requires the bank to notify it of "specified Wrongful Acts" of directors and officers having claim potential. FDIC argues that the notice can be in the broader form of "any act, error or omission" which may give rise to a claim for specified wrongful acts.

We agree with F & D that the policy requires the insured to give notice of specified wrongful acts of officers and directors. First, the plain language supports F & D's argument. § 6 of the policy provides that coverage will be provided if the Bank notifies the insurer of:

> any act, error, or omission which may subsequently give rise to a claim being made against Directors and Officers, or any of them, for a specified Wrongful Act ...

F & D contends, and this court agrees, that "specified" modifies "Wrongful Act" and not "claim." The word "specified" is meaningless if it is read to modify "claim"; we cannot envision an *unspecified*

claim. The policy language thus makes sense only if we read it to require notice of specified wrongful acts, errors, or omissions that may give rise to a claim.

Notice, as provided in the policy, is required in a claims made policy to trigger coverage. Notice in a claims made policy therefore serves a very different function than prejudice-preventing notice required under an "occurrence" policy. If the policy requirement for notice of specified wrongful acts is relaxed, then policy coverage actually expands. For example, if notice that an insured attorney has a poor docket control system is accepted as coverage triggering notice of the attorney's wrongful act, the attorney's malpractice coverage would be triggered for any number of suits predicated on missed deadlines.[3] For all of the above reasons, we are persuaded that the policy requires the insured to give the insurer notice of specified wrongful acts to trigger coverage.

B.

We next must determine whether the insureds gave adequate notice of specified wrongful acts. FDIC argues that even if notice of specified wrongful acts is required, a genuine issue of fact exists regarding whether it provided this notice. FDIC contends that reference to the cease and desist order and the reports of the banks' deteriorating financial condition put F & D on notice of acts or omissions of directors and officers which could later give rise to claims for specified wrongful acts. They argue that the policies define "wrongful act" to include a breach of duty, and the information they furnished F & D was adequate to inform F & D that the insureds breached their duty to properly supervise the banks' lending operations.

Critically, the banks did not furnish F & D with a copy of the cease and desist order. The banks' annual report simply referred to it. But even if we assume that notice of the issuance of a cease and desist order informs the insurer that the bank is having some difficulty, the issuance of such an order does not identify specified wrongful acts. The banks gave F & D no notice of the particular subsidiary involved, the particular agents, officers, or directors involved, the time period during which the events occurred, the identity of potential claimants, and the specific unsound practices made the

---

[3]See *Hirsch v. Texas Lawyers Ins. Exchange,* 808 S.W.2d 561, 565 (Tex.Ct.App.1991) (court reluctant to permit expansion of "claims made" coverage through relaxation of coverage-triggering notice requirements).

basis of the order.

We agree with the district court that the insureds failed to give F & D adequate notice of specific wrongful acts to trigger coverage under § 6(a). Notice of an institution's worsening financial condition is not notice of an officer's or director's act, error, or omission. See *American Casualty Co. v. FDIC,* 944 F.2d 455, 460 (8th Cir.1991) and *California Union Ins. Co. v. American Diversified Savings Bank,* 914 F.2d 1271, 1277-78 (9th Cir.1990), cert. denied, 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1052 (1991). Rising delinquencies and bad loan portfolios, especially in light of falling real estate prices, are insufficient to constitute such notice. The district court correctly granted summary judgment.

### III.

FDIC next argues that even if F & D sustained its initial burden of showing no genuine issue of fact, the district court abused its discretion in granting summary judgment without allowing FDIC to conduct further discovery pursuant to Fed.R.Civ.P. 56(f). See *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 354 (5th Cir.1989) (summary judgment usually should not be granted before discovery has been completed). FDIC argues that it met its burden under Rule 56(f) by specifically outlining its discovery requests and showing how such discovery would enable it to rebut F & D's motion for summary judgment.

FDIC sought to discover documents and underwriting files revealing F & D's analysis of materials submitted by the banks. FDIC argues that if it had been allowed to review this information, it could have demonstrated a genuine issue of fact regarding whether F & D had actual notice of potential claims against the insureds. FDIC argues that the discovery would have shed light on whether the purposes of the notice requirement of § 6(a)(2) were satisfied.

But the policy requires the insured to give written notice of specified wrongful acts of its officers and directors. We agree with courts which hold that the relevant question is whether the insured objectively complied with this provision. See *California Union,* 914 F.2d at 1278; *FDIC v. Continental Casualty Co.,* 796 F.Supp. 1344, 1353 (D.Or.1991). The subjective inferences the insurer's representatives draw from the notice it receives are not relevant. We consider the notice the

insured sends the insurer and determine objectively whether that notice meets the policy requirements.

Because all communications between F & D and the insureds had already been produced, and these did not show that the insureds gave notice of a specified wrongful act that might give rise to a claim, further discovery of F & D's underwriting files was unnecessary. See *California Union,* 914 F.2d at 1278.

AFFIRMED.