United States Court of Appeals,

Fifth Circuit.

Nos. 93-3730, 93-3732.

RESOLUTION TRUST CORPORATION, in its Capacity as Receiver of Peoples Federal Savings and Loan Association, Plaintiff-Appellant Cross Appellee,

v.

Donald J. AYO, Donovan J. Barker, George H. Diedrick, Jr., Ambrose H. Landry, Succession of John F. Pugh, Sr., and Troy W. Thompson, Jr., Defendants.

Fidelity and Deposit Company of Maryland, Defendant-Appellee Cross Appellant.

RESOLUTION TRUST CORPORATION, Plaintiff-Appellant,

v.

Louis A. MIRAMON, Jr., et al. Defendants,

Louis A. Miramon, Jr., et al., Defendants-Appellants,

Fidelity & Deposit Company of Maryland, Defendant-Appellee.

Sept. 9, 1994.

Appeals from the United States District Courts for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, SMITH, and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The above consolidated cases were brought by the RTC against former officers and directors of banks who carried Director & Officer Liability Policies with Fidelity & Deposit Co. of Maryland ("F & D"). In both cases, the district judges found that no genuine issue of material fact existed, and granted summary judgment in favor of F & D on the grounds that the insureds failed to comply with the notice requirements of the F & D policy. The relevant portions of the policies for each case are identical. The issues of law presented for appeal are also substantially the same for both cases. For the following reasons, we affirm the district courts decisions.

## FACTS

*RTC V. MIRAMON*

The individual defendants in this case are former directors and officers of the federally insured

thrift South Savings and Loan Association ("South"). In 1982, F & D issued an insurance policy on behalf of South Savings and its officers and directors providing coverage for director and officer liability. This policy was effective between May 3, 1982 and May 31, 1985. In 1985, F & D issued a second director and officer liability policy in favor of South Savings which became effective on May 31, 1985. South Savings' insurance coverage with F & D terminated on May 31, 1986.[1]

On August 7, 1992, the Resolution Trust Corporation ("RTC"), as receiver of South Savings, instituted this litigation against the director defendants. The RTC alleged that the directors were liable under theories of gross negligence and breach of fiduciary duty resulting from the directors' alleged misdealing in eight different transactions.[2] Additionally, RTC filed a third party action against F & D under Louisiana' direct action statute, La.R.S. 22:655. In this action, the RTC contends F & D is liable for the losses sustained as a result of the directors' alleged misconduct by virtue of the 1982 and 1985 insurance policies. The directors filed cross-claims against F & D in which they assert that, under the director and officer liability policy, F & D has a duty to defend, including a duty to advance defense costs, and a duty to provide liability coverage.

The district judge concluded that both the RTC and the directors failed to point to any evidence which suggested that South Savings or the directors complied with the notice requirements of the policy, or that they even attempted to put F & D on notice for the claims and alleged misconduct asserted in this case. "To the contrary, the undisputed evidence, including South Savings' and the defendant directors' repeated denials that they had knowledge of any conduct that might lead to the filing of a claim in renewal application forms, establishes that no notice was provided to F & D as a matter of law." The judge noted that since the underlying facts in the case were undisputed, and these facts were insufficient to satisfy the notice requirements of the policy, summary judgment

---

[1] The district court's order points out that on May 31, 1986, South Savings obtained coverage from CNA Insurance Company, thereby precluding South Savings from exercising the option of the "Discovery Clause" for extending the coverage period provided for in clause 2 of the 1985 policy.

[2] The eight transactions involve the purchase of South Savings' Mandeville branch site; the purchase and construction of South Savings' main office; the St. James Partnership loans; the Lake Hills Village and Madison Street/Golden Shores loans; the Westwood Estate loans; the Garret workout loans; the Atrium loan; and the Three S. Enterprises loan.

was proper.

*RTC V. AYO*

This suit was brought by the RTC, as receiver for Peoples Federal Savings & Loan Association, Thibodaux, Louisiana ("Peoples"), against certain directors and officers of Peoples and against its directors and officers liability insurance carrier, F & D, pursuant to the Louisiana Direct Action Statute, La.R.S. 22:655.

The RTC sought to recover losses in excess of $2.2 million sustained by Peoples as a result of the alleged acts and omissions of the individual directors. The claims arose from a number of different deficiencies relating to loan underwriting, collection, and management practices on approximately fifty (50) loan transactions. RTC alleges that claims covered under the policies issued to the directors were made against the directors by federal banking regulators during the policy period and/or that F & D received actual or constructive notice of such claims or potential claims during the policy period. The D & O policies at issue were in effect from June 25, 1983 through June 25, 1985, and from June 25, 1985 through June 25, 1986.[3] Similarly, the district court entered summary judgment in favor of F & D.

*The Insurance Policies*

The F & D policies are entitled "Directors and Officers Liability Insurance Policy Including Association Reimbursement." The policies in question are "claims made" policies, as opposed to the customary "occurrence" policy. Under claims made policies, the mere fact that an "act, error, or omission" occurs during the policy period is not sufficient to trigger insurance coverage. *FDIC v. Mijalis,* 15 F.3d 1314, 1330 (5th Cir.1994). In order to trigger coverage, such policies usually require that a claim be made against the insured during the policy period. The F & D policies also provide coverage for potential claims provided F & D receives, within the policy period, notice of the occurrence of a specified wrongful act. The controversy in the case before us stems primarily from the notice provisions which dictate that for potential future claims to be treated as a "claim" made

---

[3]The major difference between the two policies is that the second policy contained endorsements for an insured-versus-insured exclusion and a regulatory exclusion. Neither of these exclusions were involved in the district court's decision.

during the policy year, the insured must notify F & D, within the policy period, of any occurrences that may subsequently result in a claim. The policy provides in pertinent part:

6. **NOTICE OF CLAIMS**

(a) If during the policy period, or during the extended discovery period if the right is exercised by the Association or the Directors and Officers in accordance with Clause 2, the Association or the Directors and Officers shall:

(1) receive written or oral notice from any party that it is the intention of such party to hold the Directors and Officers, or any of them, responsible for a specified Wrongful Act; or

(2) become aware of any act, error or omission which may subsequently give rise to a claim being made against the Directors and Officers, or any of them, for a specified Wrongful Act;

and shall during such period give written notice thereof to the Company as soon as practicable and prior to the date of termination of the policy, then any claim which may subsequently be made against the Directors and Officers arising out of such Wrongful Act shall, for the purpose of this policy, be treated as a claim made during the Policy Year or the extended discovery period in which such notice was first given.

(b) The Association or the Directors and Officers shall, as a condition precedent to their rights under this policy, give to the Company notice in writing as soon as practicable of any claims made and shall give the Company such information and cooperation as it may reasonably require.

The notice requirements in claims made policies allow the insurer to "close its books" on a policy at its expiration and therefore "attain a level of predictability unattainable under standard occurrence policies." *FDIC v. Mijalis,* 15 F.3d 1314, 1330 (5th Cir.1994). Insurance companies may limit their liability through clear and unambiguous notice provisions, and impose any reasonable conditions they wish upon the insureds under the contract. *Livingston Parish School Bd. v. Fireman's Fund Am. Ins. Co.,* 282 So.2d 478, 481 (La.1973). *See also, FDIC v. Barham,* 995 F.2d 600, 604, n. 9 (5th Cir.1993). The purpose of the reporting requirement is to define the scope of coverage by providing a certain date after which an insurer knows it is no longer liable under the policy, and for this reason such reporting requirements are strictly construed.

Despite the enormous volume of briefs involved in this consolidated case, and the myriad of parties involved, the crux of the both cases lies in two specific issues:

1. Did the insureds provide F & D with sufficient notice of "acts, errors, or omissions which may subsequently give rise to a claim such that the claims eventually made should be treated as claims made during the policy year?"

2. If not, is the failure of the insured to provide the requisite notice serve as a defense against the RTC's claim under Louisiana's Direct Action Statute?

*STANDARD OF REVIEW*

We review the district court's grant of summary judgment *de novo.* *FDIC v. Selaiden Builders, Inc.,* 973 F.2d 1249, 1253 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1944, 123 L.Ed.2d 650 (1993). Summary judgment is appropriate if the movant demonstrates that there are no genuine issues of material fact. FED.R.CIV.P. 56(c).

Further, the standard of review requires the court to read all evidence in the light most favorable to the non-moving party and make all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The judge is not to weigh the evidence on summary judgment, but accept the facts pled by the non-movant as true, making a determination based on that evidence as to whether a genuine issue of material fact exists. *Id.* at 249, 106 S.Ct. at 2510.

"Applying Louisiana rules of construction, we are mindful that "[a]n insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties.' " *FDIC v. Barham,* 995 F.2d 600, 603 (5th Cir.1993). If the terms of the policy are ambiguous, they will be construed in favor of the insured. *Id.* None of the recent decisions from this court construing substantially identical policy provisions have held them to be ambiguous. Therefore, we have no authority to alter the terms of the policies under the guise of contractual interpretation. *Id.*

*Was There Notice of Potential Future Claims?*

The parties contest the precise "type" of notice the policy requires the banks to give to F & D regarding potential future claims before they are considered claims made within the policy's period of coverage. F & D contends that the policy requires the bank to notify it of "specified Wrongful Acts" of directors and officers having claim potential. RTC argues that the notice can be in the broader form of "any act, error or omission" which may give rise to a claim for specified wrongful acts. They contend that the district court erred in failing to find sufficient notice of the specific wrongful acts that gave rise to the RTC's claims in the liability action, or at the very least, in failing to find genuine issues of material fact to exist.

Neither the RTC nor the directors contend the F & D received written notice within the policy period of a third party's intention to hold the directors and officers responsible for a specified wrongful act. However, the RTC and the directors argue that F & D received written notice, within the policy period, of specific acts, errors, and omissions that could give rise to a claim. In support of their position, the RTC and directors of South Savings point to F & D's receipt of regulatory reports (immediately forwarded by the appellants) issued by the Federal Home Loan Bank Board in 1984, management reports prepared by an independent auditing agency in 1982, 1984, and 1985, South Savings' 1983 and 1985 audited financial statements, South Savings' financial reports which were provided to the Federal Home Loan & Bank Board, and copies of the complaints and other materials associated with two lawsuits filed against South Savings and Director Englande.

The lower court in the *RTC v. Miramon* case found that such evidence reveals that F & D possessed general information of South Savings' improper lending practices and financial difficulties and that this information contributed, in part, to the eventual termination of the contractual relationship between F & D and South Savings. The district court concluded, however, that this was legally insufficient to prove that "South Savings or the officers and directors attempted to comply with the literal terms of Section 6(a) by providing F & D with "written notice of any specific wrongful acts they believed to have claim potential.' "

Likewise, the appellants contend that the notices forwarded in the *RTC v. Ayo* case also constituted notice of specific instances of acts, errors, or omissions that may subsequently give rise to a claim. However, the focus of appellant's brief in this case centers around the fact that the insured, Peoples' Savings, received and was made aware of the acts, errors, or omissions that occurred during the policy period. The brief's position relies heavily on the premise that the failure of the insured to notify F & G as per the contract *cannot* be asserted as a bar to the third party action under the Louisiana Direct Action Statute. As discussed in the second section of this memo, we do not feel this position is supported by the law. Therefore, we will continue with appellant's argument that F & D did in fact receive notice of potential future claims during the policy period.

RTC contends that Peoples' independent auditor provided the directors with a management

letter, dated February 14, 1984, reviewing the operations of Peoples for the previous year. This letter was later discovered by F & D.[4] They claim that the letter discusses numerous deficiencies of Peoples' operations and sets forth how those operations should be undertaken. RTC urges that this letter apprised F & G that if Peoples failed to heed the auditor's detailed guidelines, such action would constitute deficiencies on future loans. RTC also claims that F & D requested a copy of the results of the 1986 Regulatory Examination, though it is not clear whether F & D actually was sent a copy. This letter, the RTC alleges, is replete with details of specific wrongful acts which have become the basis of the RTC's current claim.

RTC argues that the provision contained in 6(a) of the policy does not require that notice of "specific wrongful acts" be given. Nor does it require that the insured transmit notice that a specific act possessed significant claim potential. Instead, the section insures against liability arising from any act or omission of which the insured is aware that may subsequently give rise to a claim. This language, appellants contend, is considerably broader than the provision at issue in prior cases cited by the district court and appellee. Moreover, the clause is, at worst, ambiguous and must be construed in favor of the insured.

This issue was recently addressed by this court in *FDIC v. Mijalis,* 15 F.3d 1314 (5th Cir.1994). In *Mijalis,* the language in the Loss Provision was substantially identical to the policy before us, where the policy required written notice to the insurer of acts or occurrences amounting to potential claims. *Id.* at 1329. The FDIC claimed that insurance coverage was triggered because the insureds gave written notice to the carrier, International, in the form of letters, communications, bank renewal applications which disclosed the existence of a cease and desist order, and other financial information, each supposedly provided International with notice of "occurrences which may subsequently give rise to a claim." *Id.* at 1334. This court held that the financial information

_____

[4]The management letter was found in the files of Sternfels Insurance, Inc., the local insurance agency who serviced the account with Peoples. Although it is arguable whether such a "discovery" would comply with the specific directive to "give written notice thereof to the Company as soon as practicable," this concern need not be addressed in view of the conclusion that the letter does not meet this court's threshold for providing objective notice of specific wrongful acts.

conveyed to International by the Bank did not objectively rise to the level of notice of specific wrongful acts. *Id.* at 1336. Judge King states that "[t]he question is whether the information supplied to [the insurer] by the insureds objectively gave "written notice of specified wrongful acts [by the] officers and directors.'" *Id.* Subjective inferences drawn from general information provided to the insurer are irrelevant to the notice inquiry. *id.* Since these factual determinations were made following a jury trial, this court found it unnecessary to remand the case. *Id.* at 1337.

The exact policy provision before us was interpreted in *McCullough v. Fidelity & Deposit Co.,* 2 F.3d 110, 112 (5th Cir.1993). This court, applying Texas substantive law, agreed with F & D that the policy language makes sense only if it is read to require notice of "specified wrongful acts, errors, or omissions that may give rise to a claim." *Id.* The bank, during the policy renewal process, revealed to F & D that the OCC had issued a cease and desist order to one of its subsidiaries and that the bank was generally experiencing increased loan losses and delinquencies. *Id.* at 111. We affirmed summary judgment in favor of F & D, holding that "[n]otice of an institution's worsening financial condition is not notice of an officer's or director's act, error, or omission." *Id.* at 113. This court emphasized that "the proper focus of the district court's inquiry is whether the insured had *objectively* complied with such a notice provision, and not whether the insurer has subjectively drawn inferences that potential claims exist from the materials submitted by the insured." *McCullough,* 2 F.3d at 113. *See Mijalis,* 15 F.3d at 1336 (stating that subjective inferences drawn from general information provided to the insurer are irrelevant to notice inquiry).

Even though the policies in *McCullough* defined "wrongful act" to include a breach of duty, this court concluded that a cease and desist order was insufficient to constitute notice that the insureds breached their duty to properly supervise the banks' lending operations. *Id.* at 113. This Court then set forth the degree of specificity required in the notice, including such detail as the particular subsidiary involved, the particular agents, officers, or directors involved, the relevant time periods, the identity of potential claimants, and the specific unsound practices. *Id.* at 113.

We believe this precedent under Texas law is an accurate description of Louisiana law as well, mandating the insured to "objectively' comply with this provision. *McCullough,* 2 F.3d at 113.

The subjective inferences the insurer's representatives draw from the notice it receives are not relevant.

Because all communications between F & D and the insureds have already been produced, and these do not show that the insureds gave notice of a specified wrongful act that might give rise to a claim according to the parameters mandated by *McCullough,* we find these correspondences deficient to trigger policy coverage. This point is

AFFIRMED.

*Can Lack of Notice Bar RTC's Direct Action Claim?*

Appellants argue alternatively that even if the memorandum, letters, and communications forwarded to F & D do not meet the requisite "notice of any act, error, or omission which may subsequently give rise to a claim," such notice failure cannot be asserted as a defense to coverage in this case unless F & D can demonstrate that it has been irreparably prejudiced. This action was brought pursuant to Louisiana's Direct Action Statute, and this court had declared that Louisiana law provides that an injured party asserting a direct action is not barred by the insured's non-prejudicial failure to comply with the notice provision of a liability policy. *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 578 (5th Cir.1990). The RTC claims it is a "third party" to the liability policies at issue, as it not only represents the failed institution, but also any stockholder, member, account holder, depositor, officer, or director of the bank. As such, RTC alleges that it is insulated from the lack of notice defense.

This argument was touched on in *Mijalis,* but because the FDIC conceded to the court that insurance coverage existed under the "potential claims" clauses only if the insurer was given notice of those potential claims, this court did not address the district court's proclamation that the notice provision was void as against the FDIC unless the insurer could demonstrate prejudice resulting from the lack of notice. *Mijalis,* 15 F.3d at 1334-35, & n. 5. We now must confront this concern.

The RTC has asserted claims against the directors and officers of the banks in its corporate capacity. The RTC represents the failed bank's shareholders, itself as a creditor, and all previous creditors of the banks. This court has held that the policy terms do not control the scope and nature

of the injured third party's rights. The third party's rights under the statute vest at the time of injury, where the rights of the insured remain subject to conditions in the policy that arise subsequent to the injury, such as the requirement of notice. *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 578 (5th Cir.1990). "An insurer may not raise the nonprejudicial failure of its insured to give notice of accident or suit as a valid defense to claims of injured third parties." *See Gulf Island, IV v. Blue Streak Marine, Inc.,* 940 F.2d 948 (5th Cir.1991); *Jackson v. Transportation Leasing Co.,* 893 F.2d 794 (5th Cir.1990); *Chennault v. Dupree,* 398 So.2d 169 (La.App. 3d Cir.1981).

It is important not to confuse the distinct "notice requirements" with which we are dealing in the present case. Ours is the notice that turns potential future claims, which could be made outside the policy's coverage, into actual claims made during the policy's term. This claim-triggering notice, i.e., the notice provision in 6(a), serves a very different function than the prejudice-preventing notice required under clause 6(b) that was central to the *Auster* opinion. The prejudice-preventing notice clause is for the benefit of the insurance company, allowing it to timely intercede and protect its own interest. On the other hand, the claim-triggering notice provision serves the insured by allowing coverage for claims made outside the policy period, provided F & D was notified of the potential claim. If the policy requirement for notice of specified wrongful acts is relaxed, then policy coverage actually expands. This constitutes prejudice as a matter of law, since it circumvents the contract mutually entered into by the parties and creates insurance protection where none existed before. The court provides the following example:

> [I]f notice that an insured attorney has a poor docket control system is accepted as coverage triggering notice of the attorney's wrongful act, the attorney's malpractice coverage would be triggered for any number of suits predicated on missed deadlines. *See Hirsch v. Texas Lawyers Ins. Exchange,* 808 S.W.2d 561, 565 (Tex.Ct.App.1991) (court reluctant to permit expansion of "claims made" coverage through relaxation of coverage-triggering notice requirements).... [W]e are persuaded that the policy requires the insured to give the insurer notice of specified wrongful acts to trigger coverage.

*McCullough,* 2 F.3d at 112. The policy laid out in *Auster* was designed to protect injured third parties from the harsh consequences that would result if, after filing a claim against the insured, the insured fails to comply with the notice requirements—which are outside of the injured third party's control. *Auster,* 891 F.2d at 578. *Auster,* which dealt with an occurrence policy, is not controlling

for our set of circumstances, where it was within the injured third party's control to file a claim or not once the act, error, or omission caused injury. The rights of the injured party under claims-made policies, unlike the occurrence policy in *Auster,* do not vest at the time of the injury, but at the time a claim is made.[5] "Potential claims" are not covered by the D & O policies unless F & D had in fact received objective notice of those potential claims. Notice to F & D is a *sine qua non* of any potential claim known to the insured during the policy period. *See Bank of Louisiana v. Mmahat, Duffy, Opotowsky & Walker,* 608 So.2d 218 (La.Ct.App.1992), *cert. denied,* 613 So.2d 994 (La.1993); *Bank of the South v. New England Life Ins. Co.,* 601 So.2d 364 (La.Ct.App.1992). Therefore, both the district courts are AFFIRMED.

SUBORDINATE ISSUES

*Duty to Defend or Contemporaneously Advance Defense Costs*

Appellants complain that the district court erred in failing to find F & D has a duty to advance or pay for the defense costs. Under Louisiana law, it is established that an insurer's duty to defend is determined by the allegations set forth in the pleadings. *Jensen v. Snellings,* 841 F.2d 600, 612 (5th Cir.1988). Only if the allegations preclude *any possibility* of coverage will the insurer be relieved of its duty to defend the insured. *Id.* As the first two issues discussed demonstrate, this is the case here. The claims made by the RTC fall outside the policy's period, and F & D should not be called to foot the bill for ex-policyholders in their attempt to extend coverage.

The motion to certify the questions on appeal to the Louisiana Supreme Court is DENIED, since application of existing law disposes of the issues.

AFFIRMED.

---

[5]Had a claim been made against either of the insureds during the applicable policy periods, then the rule articulated in *Auster* might apply.