# IN THE SUPREME COURT OF TEXAS

══════════

No. 11-0394

══════════

LENNAR CORPORATION, LENNAR HOMES OF TEXAS
SALES & MARKETING LTD., AND LENNAR HOMES OF TEXAS
LAND & CONSTRUCTION LTD., PETITIONERS,

v.

MARKEL AMERICAN INSURANCE COMPANY, RESPONDENT

═══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════

JUSTICE BOYD, concurring.

If we were writing on a blank slate, I would hold that Markel's insurance policy does not cover Lennar's liabilities because Lennar incurred those liabilities through settlements to which Markel had not "previously agreed in writing." But we are not writing on a blank slate, and our precedent compels us to disregard the policy's consent requirement because Lennar's failure to obtain Markel's prior agreement to the settlements did not harm or prejudice Markel. I therefore concur in the Court's judgment. But if we are going to continue imposing the prejudice requirement, as I agree our precedent compels us to do, we should admit we are doing so on public policy grounds, rather than continue our well-intended but ultimately inadequate efforts to justify our holdings on the basis of contract principles.

1

# I.
## Courts and Contracts

We have repeatedly said that we will not re-write contracts. "Courts cannot make new contracts between the parties, but must enforce the contracts as written." *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965). As the Court reaffirms today, insurance agreements are simply contracts; we construe them by applying general rules of contract construction, and we assume that the parties intended what the words of the contract say. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "[W]e may neither rewrite the parties' contract nor add to its language." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003).

Except, sometimes, we do. Judicially implied warranties provide one obvious example. In *Humber v. Morton*, we inserted into contracts between homebuilders and their purchasers an agreement that the builder warrants that the home has been constructed in a good and workmanlike manner and is suitable for human habitation. 426 S.W.2d 554, 555 (Tex. 1968). And in *Melody Home Mfg. v. Barnes*, we implied a similar warranty in contracts between those hired to repair or modify tangible property and the customers who sue them for deceptive trade practices. 741 S.W.2d 349, 354 (Tex. 1987). In doing so, we acknowledged that "[i]mplied warranties are created by operation of law and are grounded more in tort than in contract," *id.* at 352, but we judicially inserted them into the parties' contracts because "public policy so mandates." *Id.* at 353.

Similarly, as in this case, we have repeatedly inserted into insurance contracts a requirement that insurers must suffer harm or prejudice before they can deny coverage based on certain provisions, even though the policies' unambiguous language would have permitted the insurers to

2

deny coverage without showing prejudice. In my view, we have struggled to explain and reconcile our holdings in these cases, primarily because we (quite understandably, in my view) want to avoid judicially inserting the prejudice requirement as a matter of public policy. I am convinced that there is now no other way to reconcile them. Although I would hold differently in the absence of our prior decisions, our precedent compels us to imply the prejudice requirement in this case as well. For the sake of consistency and predictability, however, we should acknowledge that we are doing so because "public policy so mandates."

## II.
## Precedent

This Court has directly addressed the prejudice requirement five times over the past forty years. Although we declined to impose the requirement the first time we considered it, we then did impose it in each of the subsequent cases. Our reasons for doing so have evolved in each case, to the point that, in my opinion, they are no longer logically or legally sufficient.

### A. *Cutaia*

When this Court first addressed the issue more than forty years ago, we refused to read a prejudice requirement into an insurance contract because "the matter of rewriting the insurance provisions in question is properly within the prerogative of the State Board of Insurance or the Legislature." *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278, 278 (Tex. 1972). *Cutaia* involved an automobile liability policy that required the insured to "forward any suit papers immediately to the [insurance] company." *Id.* The insured failed to comply with this requirement, but "the insurance company stipulated that it had not been harmed by the failure to forward the suit papers." *Id.* at 279. Nevertheless, the Court recognized that this prompt-service requirement was a condition

3

precedent to coverage. The Court thus held that the insured's failure to fulfill the condition negated the insurer's liability because, "after all, this is what the contract says." *Id.*

**B.    *Hernandez***

Twenty-two years after *Cutaia*, the Court changed course in *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex. 1994). *Hernandez* involved uninsured motorist coverage under an automobile policy that—like the policy at issue in the present case—required the insured to obtain the insurer's consent prior to any settlement. Unlike the present case, the consent provision was expressed as an exclusion to the coverage that the policy otherwise provided. *Id.* at 692 n.1 (policy provided that "[t]his insurance does not apply" to liability incurred through a settlement without consent). The insured settled a claim without obtaining the insurer's prior consent, but the trial court found that this caused the insurer "no material prejudice." *Id.* at 692. Without citing or discussing *Cutaia*, we held that "an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement . . . ." *Id.*

Although we noted in *Hernandez* that "[m]ost other jurisdictions presented with this issue have likewise imposed a prejudice requirement, primarily on public policy grounds," *id.* at 693 n.4, we did not characterize our holding as one based on public policy considerations. Instead, we reasoned that the insured breached the agreement by failing to obtain the insurer's consent, but the breach was not material because it did not cause harm or prejudice to the insurer, and it therefore did not release the insurer from its obligation to perform. *Id.* at 693–94. Justice Enoch dissented because he did not agree that the insured's failure to obtain the insurer's consent was a breach of the agreement. Instead, the consent requirement simply defined what the policy covered, or more

4

specifically, what the policy excluded from coverage. In Justice Enoch's view, *Hernandez* is not a case "about a breach of contract. This case is about coverage." *Id.* at 694 (Enoch, J., dissenting).

## C.    *PAJ*

We have addressed the prejudice requirement three times since *Hernandez*, and in each case we have imposed the prejudice requirement. First, in *PAJ, Inc. v. Hanover Insurance Co.*, we considered a provision in a commercial general liability policy that required the insured to notify the insurer of any claim or suit "as soon as practicable." 243 S.W.3d 630, 631 (Tex. 2008). The parties stipulated that the insured failed to comply with this requirement, but they also stipulated that the insurer was not prejudiced by the untimely notice. *Id.* Although the parties disagreed on whether the provision was a condition precedent (as in *Cutaia*) or "merely a covenant," we held—in a 5–4 split decision—that, in either case, the insured's failure to provide prompt notice would negate coverage only if the insurer was prejudiced. *Id.* at 632–33. As in *Hernandez*, we did not insert the prejudice requirement as a matter of public policy, but instead reasoned that the insured's failure to give prompt notice would negate coverage only if it was "a material breach." *Id.*

The four dissenting Justices concluded that the prompt-notice requirement was a condition precedent rather than a covenant, and to them that was the controlling difference: "*Hernandez*'s materiality-of-breach analysis is inapposite here because PAJ did not breach a covenant. Rather, it failed to comply with a condition precedent, a strict requirement that precedes any obligation on the part of Hanover under the policy." *Id.* at 639 (Willett, J., dissenting).

In a discussion that is crucial to my decision in the present case, however, the dissent in *PAJ* distinguished that policy's prompt-notice requirement (which it considered to be a condition precedent) from the settlement-without-consent provision in the policy at issue in *Hernandez* (which

5

it considered to be a covenant). In the dissent's view, settlement-without-consent covenants differ from prompt-notice conditions because a breach of the former "might occur long after the insurer has learned of a suit and assumed its duty to defend." *Id.* Not inserting the prejudice requirement into a settlement-without-consent provision, the dissent reasoned, thus "makes little sense from a timing standpoint [and] also disserves the interests of both parties to the insurance contract." *Id.* "Considering the prejudice, if any, to the insurer of a breach of the consent requirement is therefore warranted." *Id.* (Willett, J., dissenting).

**D.      *Prodigy***

The following year, we addressed the issue again in *Prodigy Communications Corp. v. Agricultural Excess & Surplus Insurance Co.*, 288 S.W.3d 374 (Tex. 2009). *Prodigy* also involved a prompt-notice provision, but unlike the "occurrence-based" commercial general liability policy at issue in *PAJ*, the policy at issue in *Prodigy* was a "claims-made" directors' and officers' liability policy.[1] *Id.* at 375. More accurately, the *Prodigy* policy was a "claims-made-and-reported" policy, in that it required, "as a condition precedent" to coverage, that the insured give written notice of the claim to the insurer "as soon as practicable . . . but in no event later than ninety (90) days" after expiration of the policy's coverage period. *Id.* at 375, 379 n.7. Thus, the policy only covered claims that the insured received and reported to the insurer during the coverage period or the 90 days

---

[1] As we explained in *PAJ*, a "claims-made" policy "'only covers those claims first asserted against the insured during the policy period. . . . This coverage differs from "occurrence" type coverage, . . . which covers only claims arising out of occurrences happening within the policy period, regardless of when the claim is made.'" *Prodigy*, 288 S.W.3d at 378 (quoting 3 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 12A.05[3] (2006)). Stated otherwise, "[a] 'claims-made' policy covers occurrences [that] may give rise to a claim that comes to the attention of the insured and is made known to the insurer during the policy period. An 'occurrence' policy covers all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence itself is brought to the attention of the insured or made known to the insurer during the policy period." *Yancey v. Floyd W. & Co.*, 755 S.W.2d 914, 918 (Tex. App.—Fort Worth 1988, writ denied) (citations omitted).

6

thereafter, and required the insured to report the claim "as soon as practicable" within that time frame.

Prodigy received the claim and gave the required notice within the 90-day period, but did not do so as soon as practicable. The insurer conceded, however, that it suffered no prejudice from the delayed notice. In a 6–3 split decision, the Court held that the insured's failure to give notice of the claim as soon as practicable would negate coverage only if the failure prejudiced the insurer. *Id.* at 375. As in *PAJ*, the Court reasoned that the insured's failure to give notice as soon as practicable was a breach of the agreement, but the breach would excuse the insurer's performance only if it was material. *Id.* at 378. And also as in *PAJ*, the Court held that the prejudice requirement applies regardless of whether the provision is expressed as a covenant or a condition precedent. *Id.*

Notably, however, the Court in *Prodigy* recognized an important difference between the policy's requirement that the insured give notice within 90 days of the coverage period and that it do so as soon as practicable during the coverage-period-plus-90-days time frame. Specifically, the Court explained that, unlike the "as soon as practicable" requirement, the 90-day deadline actually "define[s] the scope of coverage" in a claims-made-and-reported policy, "by providing a certain date after which an insurer knows it is no longer liable under the policy." *Id.* at 380 (quoting *Resolution Trust Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir. 1994)). The Court thus reasoned that, because the 90-day notice deadline "is considered essential to coverage" under the policy, the insured's failure to report the claim by that deadline *would* negate coverage even if the insurer suffers no harm or prejudice. *Id.* at 381. But if, as actually occurred in *Prodigy*, the "insured gives notice of a claim within the policy period or other specified reporting period, the insurer must show that the insured's

7

noncompliance with the policy's 'as soon as practicable' notice provision prejudiced the insurer before it may deny coverage." *Id.* at 382.

The three Justices who dissented in *Prodigy* had also dissented in *PAJ*. As in *PAJ*, they concluded that, because the prompt-notice requirement was expressed in the policy as a condition precedent, the insured's failure to give prompt notice negated coverage regardless of whether the insurer was prejudiced. *Id.* at 383 (Johnson, J., dissenting). Importantly for my decision in the present case, they disagreed with the majority's distinction between the "as soon as practicable" requirement (to which the majority implied the prejudice requirement) and the 90-day deadline (to which the majority would not have implied the prejudice requirement) because, in the dissent's view, both requirements were essential to the parties' bargain as stated in the contract. *Id.* at 384 (Johnson, J., dissenting).

### E.   *Financial Industries*

Finally, on the same day we issued our decision in *Prodigy*, we answered a certified question in *Financial Indus. Corp. v. XL Specialty Ins. Co.*, 285 S.W.3d 877 (Tex. 2009). The policy at issue in *Financial Indus.* was a claims-made policy that required, "as a condition precedent" to coverage, that the insured give the insurer written notice of any claim "as soon as practicable," but (unlike the policy in *Prodigy*) it did not impose a specific notice deadline that limited the scope of coverage. *Id. at 877–78.* In other words, it was a claims-made policy, but not a claims-made-and-reported policy. Without any dissent, the Court held that the insurer could not deny coverage without showing that the insured's failure to provide notice as soon as practicable prejudiced the insurer. *Id.* at 879. Following *Prodigy*, the Court reasoned that, absent a showing of prejudice, the insured's

failure to provide prompt notice did not deny the insurer "the benefit of the claims-made nature of its policy," and thus the breach was not material.

### III.
### Application

Like the Court in *Cutaia* and the dissents in the subsequent cases, I believe we have pursued the wrong path in our dealings with this issue. "The better choice for courts, as the Court noted in *Cutaia*, is if changes to insurance policy language are to be mandated . . . the changes should be left to the Legislature and regulatory agencies." *Prodigy*, 288 S.W.3d at 388–89 (Johnson, J., dissenting). Out of respect for the parties' freedom of contract, "this Court should not overreach its boundaries and imply new standards into insurance contracts." *Hernandez*, 875 S.W.2d at 694 (Enoch, J., dissenting) (citing *Cutaia*, 476 S.W.2d at 281).

Moreover, I believe the Court's attempt to explain and reconcile these decisions based on contract principles has only muddied the waters and is no longer workable. In *Hernandez*, we acknowledged that most jurisdictions have "imposed a prejudice requirement, primarily on public policy grounds," 875 S.W.2d at 693 n.4, but we chose not to do so, and instead imposed the prejudice requirement as a logical result of the rule that a party's breach of contract excuses the other party's performance only if the initial breach is material. That analysis worked fine for *Hernandez*, but it has become unworkable as the subsequent cases have required the Court to address a variety of provisions (prompt service of suit papers, prompt notice, and settlement-without consent) that serve a variety of purposes within the policies (conditions precedent, covenants, exclusions, definitions, and descriptions of the scope of coverage).

9

Here, we are faced with a policy that expressly requires the insured to obtain the insurer's written agreement before settling a claim, but it does so in two different places and to serve two different purposes. In the Policy Conditions, the requirement is a condition precedent, and the majority holdings in *PAJ* and *Prodigy* clearly require that we impose the prejudice requirement on that condition. In the Insuring Agreement's Definitions, however, the settlement-without-consent provision defines the scope of the policy's coverage: the policy only covers an "ultimate net loss," which in the case of a settlement is established only by "a compromise settlement to which we have previously agreed in writing." In this provision, Lennar expressly agreed that Markel would only cover losses incurred through settlements to which Markel agreed in advance and in writing. This was the extent of the coverage Lennar purchased. Because Markel did not consent to the settlements with the homeowners in advance and in writing, the coverage that Lennar agreed to purchase from Markel simply did not extend to those losses.

The Court imposes a prejudice requirement anyway, based on the contract principle that, "[g]enerally, one party's breach does not excuse the other's performance unless the breach is material." *Ante* at ___. But no one (not even the Court[2]) asserts that Lennar "breached" the policy's Insuring Agreement by settling the claims without first obtaining Markels' written consent. The policy did not prohibit Lennar from settling claims without Markel's consent; it just didn't provide coverage for such a settlement. Lennar's failure to obtain Markel's prior written consent could not give rise to a cause of action for breach of the Insuring Agreement Definition. Instead, it simply prevented the settlements from falling within the types of liabilities that Lennar paid Markel to cover.

---

[2] *See ante* at ___ (referring to Lennar's "failure to comply" and "non-compliance," rather than to its "breach" of the policy's Insuring Agreement).

10

In this sense, the Insuring Agreement provision is akin to the 90-day deadline that the *Prodigy* majority agreed would be enforceable *without* a showing of prejudice. *See Prodigy*, 288 S.W.3d at 381–82 & n.10 ("most courts have found that an insurer need not demonstrate prejudice to deny coverage when an insured does not give notice of a claim within the policy's specified time frame," and "[w]e agree with this analysis"). The Justices who dissented in *Prodigy* disagreed with the majority's distinction between the 90-day deadline and the "as soon as practicable" requirement. *Id.* at 385 ("the policy language shows [the parties] intended for the two notice provisions to have the same effect: both are conditions precedent to Prodigy's rights under the policy") (Johnson, J., dissenting). They would not have imposed the prejudice requirement on the 90-day deadline or the "as soon as practicable" requirement. And yet in *PAJ*, those same dissenting Justices agreed that the imposition of a prejudice requirement on a settlement-without-consent provision is "warranted." 243 S.W.3d 630, 639 (Willett, J., dissenting).

Logically, the majority Justices who decided to impose the prejudice requirement in *Prodigy* should decide not to do so in the present case because the settlement-without-consent provision in the Insuring Agreement (like the 90-day period in the *Prodigy* policy) "defines the limits of the insurer's obligation" and "is considered essential to coverage" under the policy. *Id.* at 380, 381. And the dissenting Justices who would not have imposed the prejudice requirement in *PAJ* or *Prodigy* should decide to impose it in the present case because this case involves a settlement-without-consent requirement. *PAJ*, 243 S.W.3d at 649.

In today's ruling, the Court does not address these variables, but instead abruptly concludes that the Insuring Agreement's consent requirement is "no clearer" than, has "exactly the same" purpose as, "is no more central to the policy than," and "operates identically" to Condition E's

11

consent requirement. *Ante* at ___. I disagree with these conclusions, as should those who joined the majority in *Prodigy*. In my view, at least, the Insuring Agreement "clearly" limits coverage to settlements to which Markel previously agrees in writing, does so for the "purpose" of defining the scope of coverage rather than imposing any affirmative obligation on Lennar, and is therefore "central" to the coverage that the policy provides and "operates" differently than Condition E.

The Court essentially holds that it does not matter where in the policy a settlement-without-consent provision is located, and it does not matter whether it is expressed as a condition precedent, a covenant, an exclusion to coverage, or a definition of the scope of coverage. Presumably, the Court shares Lennar's concern that the prejudice requirement would be easily circumvented if we allowed it to turn on such variables, because insurers could simply move the appropriate sentences into the definition portion of their agreements and thereby avoid the prejudice requirement. But I do not see what is wrong with that. If "parties are free to contract as they choose," *Solar Applications Eng., Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 112 (Tex. 2010), they can define the scope of coverage however they may agree to do so, subject only to statutory, regulatory, or judicially-imposed policy limitations.

I believe the Court's effort to parse through all the variables affecting the prejudice requirement has only made Texas law more uncertain and has thereby rendered a disservice to both insureds and insurers alike. In my view, we should either imply a prejudice requirement as a matter of public policy, or not. Again, if we were writing on a clean slate, I would not. But, I "recognize the impropriety of unsettling questions [that] have been well settled by former decisions of this Court, and thereby rendering the law uncertain . . . ." *Higgins v. Bordages*, 31 S.W. 803, 804 (Tex. 1895). I agree that, with only rare exceptions, stare decisis dictates that we "adhere to our precedents

12

for reasons of efficiency, fairness, and legitimacy . . . ." *Sw. Bell Tel. Co., L.P. v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008) (citations omitted). Although I believe the Court should defer to the Legislature to decide whether and when to insert policy-based requirements into private contracts, we have repeatedly inserted the prejudice requirement for more than twenty years, and it would be imprudent to suddenly stop doing so now.

## IV.
## Conclusion

Although our precedents may be difficult to understand and reconcile, they have undoubtedly given insurers, insureds, regulators, and even the Legislature reason to expect and rely on the implied prejudice requirement. I agree we should not now alter these reasonable expectations. But for the sake of clarity, consistency, and predictability, I would stop trying to imply the requirement based on contract principles. I would instead expressly hold that, as a matter of public policy, a prompt-notice, prompt-service, or settlement-without-consent provision will negate coverage only if the lack of prompt notice, prompt service, or consent causes harm or prejudice to the insurer. Because Lennar's failure to obtain Markel's prior written agreement to Lennar's settlements did not harm or prejudice Markel, I concur in the Court's decision to reverse the judgment of the court of appeals and affirm the judgment of the trial court.

.

_____
Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** August 23, 2013

13