**H. Thomas HIRSCH, Individually, and H. Thomas Hirsch & Associates, P.C., Appellants,**

**v.**

**TEXAS LAWYERS' INSURANCE EXCHANGE, Appellee.**

**No. 08-90-00284-CV.**

Court of Appeals of Texas,
El Paso.

April 10, 1991.

Rehearing Overruled May 29, 1991.

Donald W. Taylor, Taylor, Briggs & Randolph, P.C., Houston, for appellants.

Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

In a declaratory judgment suit, the trial court entered judgment for the malpractice insurance carrier by finding that there was no coverage for the attorney nor his professional corporation. We affirm.

## FACTS

In the following discussion, on occasion, H. Thomas Hirsch and his professional corporation, H. Thomas Hirsch & Associates, P.C. may be referred to as Hirsch. Texas Lawyers' Insurance Exchange may be referred to as TLIE or the insurance carrier.

Attorney, H. Thomas Hirsch, and his professional corporation were sued in Florida for malpractice arising from legal representation. Dates become important in deciding coverage:

(1) Attorney Hirsch was served with process in the Florida malpractice suit on April 21, 1986.

(2) Hirsch's local insurance agent referred the lawsuit to United States Fire Insurance, which was Hirsch's previous malpractice carrier.

(3) United States Fire Insurance assumed the defense of Hirsch until on or about December 7, 1987, when it informed Hirsch it was declining cover-

age because Hirsch's policy was a "claims made" policy and not an "occurrence" policy.

(4) Attorney Hirsch notified Texas Lawyers' Insurance Exchange of the malpractice suit on December 14, 1987.

(5) Texas Lawyers' Insurance Exchange had issued two malpractice policies covering Hirsch and his professional corporation:

(a) Policy No. 15028—coverage dates were from April 3, 1986 to April 3, 1987.

(b) Policy No. 19103—coverage dates were from June 5, 1987 to June 5, 1988.

Texas Lawyers' Insurance Exchange, by letter dated February 16, 1988, stated it was denying malpractice coverage under Policy No. 19103. This was a "claims-made" policy and since Hirsch had been served with the Florida claim on April 21, 1986, there was no coverage under Policy No. 19103. In this letter, no specific mention was made of Policy No. 15028.

On July 25, 1988, H. Thomas Hirsch, individually and his professional corporation, filed this declaratory judgment action in the District Court in Odessa, Texas. On November 14, 1989, a joint and several judgment in excess of $900,000.00 was entered in the Florida malpractice case against Attorney Hirsch and his professional corporation.

In this declaratory judgment suit filed in Odessa, Texas, the United States Fire Insurance was ultimately dismissed from the suit. Hirsch and the Texas Lawyers' Insurance Exchange both sought summary judgments. The trial court initially granted partial summary judgment for Texas Lawyers' Insurance Exchange by finding there was no coverage provided under Policy No. 19103. Ultimately, summary judgment was granted in favor of Texas Lawyers' Insurance Exchange under Policy No. 15028 for the reason that Hirsch's claim had not been timely reported, hence no coverage existed. Attorney Hirsch's professional corporation's Motion for Summary Judgment was denied. Hirsch's pro-

fessional corporation filed a Motion for New Trial which was denied.

### "Claims–Made" vs. "Occurrence" Policies

In this case, we are dealing with only **"claims-made"** malpractice insurance policies wherein coverage depends on the claim being made and reported during the policy period. The difference between the two types of policies are:

> The major distinction between the **"occurrence"** policy and the **"claims made"** policy constitutes the difference between the peril insured. In the **"occurrence"** policy, the peril insured is the **"occurrence"** itself. Once the **"occurrence"** takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the **"claims made"** policy, it is the making of the claim which is the event and peril being insured and, subject to the policy language, regardless of when the occurrence took place. [Emphases added].

*St. Paul Insurance Co. v. House*, 73 Md. App. 118, 533 A.2d 301, 303 (1987); citing S. Kroll, *The Professional Liability Policy*, **"Claims Made"**, 13 Forum, 842, 843 (1978).

Point of Error No. One asserts the trial court erred in failing to grant attorney Hirsch's professional corporation a summary judgment because the corporation was a separate entity, and as a separate insured, it did not, as a matter of law, fail to give the insurer timely notice of the Florida claim.

■ The corporation's assertion that it was a separate insured is correct. While it is true that Texas recognizes corporations as separate and distinct from the members who comprise it, with attributes, rights and liabilities of its own, it can only act through its officers or agents. *Wells v. Hiskett*, 288 S.W.2d 257 (Tex.Civ.App.—Texarkana 1956, writ ref'd n.r.e.); *Wynne v. Adcock Pipe and Supply*, 761 S.W.2d 67 (Tex.App. —San Antonio 1988, writ denied).

■ In this action, attorney Hirsch, as president, was the proper person autho-

rized to act on behalf of his professional corporation. Where notice concerning a corporate matter is given to the president, notice is deemed to be given to the corporation also. *Phillips v. Hopwood*, 329 S.W.2d 452 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.). Attorney Hirsch's letter to the Texas Lawyers' Insurance Exchange, on his corporate letterhead, referenced the action against himself and the corporation and sought coverage for the named suit.

■ Attorney Hirsch, as president and shareholder of his professional corporation, is the proper agent for the corporation. The effect of attorney Hirsch receiving service of process in the suit against himself and his professional corporation constituted actual knowledge by himself and his corporation as to the potential liability. Consequently, the notice of the claim with a copy of the Florida action sent by Hirsch to his insurance carrier constituted notice on behalf of both H. Thomas Hirsch, individually as well as H. Thomas Hirsch & Associates, P.C. Therefore, the failure of timely notice applies to both Hirsch individually as well as to his professional corporation.

Point of Error No. One is overruled.

■ Point of Error No. Two asserts the trial court erred in failing to grant the professional corporation's summary judgment because the insurance carrier had waived and was estopped from raising a defense of late notice of the Florida claim under Policy No. 15028.

Appellant asserts that the only defense raised by the insurance carrier was that notice of the Florida claim was first made during a "gap" between policies. Appellant states that the trial court erred in finding that the Appellant was attempting to create coverage by estoppel.

The Florida claim was made on December 14, 1987, during the effective dates of insurance Policy No. 19103. As stated previously, claims-made policies cover claims made during the effective dates of the policy.

Hirsch claims that the only basis for Appellee's denial of the claim was that the

claim "fell in the gap" between the policies. He states that when an insurer has asserted one basis of denial and then finds alternate grounds for denial but fails to assert them, the insurer waives the alternate grounds for denial. *Lancon v. Employers National Life Insurance Company*, 424 S.W.2d 321 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.).

We find that Texas Lawyers' Insurance Exchange's (TLIE) denial of coverage letter does refer to the "gap" in coverage in the opening paragraph but does not refer to it as being the basis of the denial of the claim. The letter must be read in its entirety. At the bottom of the first page it states:

> In your letter dated December 14, 1987, you indicated that *Duffey* **[the Florida suit]** was filed in April 1986. A copy of the Plaintiff's Original Complaint ... was served on you on April 21, 1987. [Emphasis added].

The pertinent part of the letter continues:

> Under the facts and pertinent policy terms and provisions of the TLIE claims made policy, there is no coverage under TLIE Policy No. 19103 **or any other TLIE policy** for the claims made in ... [naming the Florida plaintiffs].
>
> Under Insuring Agreement I, TLIE agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as money damages because of *any claim first made* against the insured *and reported to the Association (TLIE) during the policy period.* [Emphases added].

Insuring Agreement IV of the June 5, 1987, Policy No. 19103 further specifies when a claim is first made, as follows:

> A claim first made during a policy period if during the policy period the *insured shall have knowledge or* become aware of any act or omission which could from [sic] the basis of the policy, *and shall during the policy, give written notice thereof* to the Association in accordance with Condition VI.
>
> As indicated above, the claims made ... [herein it refers to the Florida lawsuits] were not first made during the policy

period. Therefore, the claims were not covered under Insuring Agreements I and IV.... you had actual knowledge of the allegations made in the Duffey Original Complaint [the Florida lawsuit] which was served on you on April 21, 1986. [Emphases added].

This letter, from the malpractice carrier, when read as a whole makes it evident that TLIE was denying coverage because of notice under the policy being claimed on, as well as any other policy issued by Texas Lawyers' Insurance Exchange. Therefore, TLIE has not waived any defense of denial of coverage under either Policy No. 19103 or Policy No. 15028 based on failure to timely notify.

Point of Error No. Two is overruled.

■ Point of Error No. Three asserts the trial court erred in granting summary judgment for Appellants because the reporting requirements under the instant claims-made policies violates Texas law as well as public policy.

Specifically, Hirsch asserts that the malpractice policies of the Texas Lawyers' Insurance Exchange failed to contain any extended reporting provisions. This is not totally correct because the TLIE policy does have a extending reporting endorsement even though Hirsch contends it is too restrictive.

■ Yet, Hirsch does not make a claim of ambiguity in the insuring policies. The policy clearly provides for coverage of **"claims first made and reported"** to the insurer during the effective dates of the policy. Appellant would have us rewrite these **unambiguous** contracts. This burden should not be on the judiciary but on the legislative branch or at least on the State Board of Insurance. We should refrain from interfering with freedom of contract. Where there is a claim that a contract contravenes public policy and is unenforceable, review should be approached with caution and only where the cases fall within the purposes for judicial intervention. *Yancey v. Floyd West & Company*, 755 S.W.2d 914 (Tex.App.—Fort Worth 1988, writ denied); *Sparks v. St. Paul In-*

*surance Company*, 100 N.J. 325, 495 A.2d 406 (1985).

Insurance contracts are subject to careful scrutiny to avoid injury to the public. However, we must look to the type of contract bargained for. In *Gulf Insurance Company v. Dolan, Fertig and Curtis*, 433 So.2d 512 (Fla.1983), the Supreme Court aptly states:

> Claims-made policies ... require that notification to the insurer be within a reasonable time ... claims-made policies require that notice be given *during the policy period* itself. When an insured becomes aware of any event that could result in liability, then it must give notice to the insurer, and that notice must be given "within a reasonable time" or **"as soon as practicable"**—at all times, however, during the policy period. With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period ... negates the inherent difference between the two contract types [referring to occurrence and claims-made policies].
>
> .  .  .  .  .
>
> Claims made or discovery policies are *reporting policies*. If the (claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court would allow an extension of reporting time after the end of the policy period ... in effect rewrites the contract between the two parties. [Emphases added].

The policies, in the instant case, are unambiguous in stating that coverage is provided when claims are made and reported during the policy period. Hirsch rightly should be held to know the conditions of the TLIE's policies and the conscious choice that he made in selecting a claims-made policy instead of an "occurrence" policy. Hirsch has failed to show that the TLIE policy inhibits or discourages freedom of contract contrary to established notions of public policy, or that the particular provisions of the TLIE policies are manifestly unjust. *Pacific Employers Insurance Co.*

*v. Superior Court of Los Angeles County*, 221 Cal.App.3d 1348, 270 Cal.Rptr. 779 (1990).

Point of Error No. Three is overruled.

▉ Point of Error No. Four asserts that whether Texas Lawyers' Insurance Exchange was prejudiced by the failure of Hirsch to give timely notice was a disputed fact question precluding the granting of summary judgment.

Hirsch contends that notice-prejudice is applicable to claims-made policies. However, the clear intent and purpose of claims-made policies is to cover periods listed. *Yancey v. Floyd West & Company*, 755 S.W.2d 914. To require a showing of prejudice for late notice would defeat the purpose of **"claims-made"** policies, and in effect, change such a policy into an **"occurrence"** policy. *Pacific Employers Insurance Co. v. Superior Court of Los Angeles County*, 221 Cal.App.3d 1348, 270 Cal.Rptr. 779 (1990).

As stated by the court in *Pacific*, citing *National Insurance Underwriters v. Carter*, 17 Cal.3d 380, 131 Cal.Rptr. 42, 551 P.2d 362 (1976):

> An insurance company has the right to limit the coverage of a policy issued by it, and when it has done so, the plain language of the limitation must be respected.

We should not on our own rewrite policies to permit notice-prejudice to be applied to claims-made policies. It would be interfering with the public's right to contract. Although the notice requirements of a "claims made" policy appear to be harsh, the ability to make a choice based on need and financial ability is in the public interest. We must not convert claims-made policies to occurrence policies by judicial acts. The policies in question are **"clear, unequivocal, and hence unambiguous"** and therefore its terms are enforceable. *Yancey*, 755 S.W.2d at 924.

Point of Error No. Four is overruled.

Point of Error No. Five asserts the trial court erred in granting summary judgment because material issues of fact existed.

Appellant says there is a fact issue as to which of the insureds lost coverage even if the notice requirement is strictly enforced and a fact issue exists as to whether Texas Lawyers' Insurance Exchange has waived the lateness of notice pertaining to Policy No. 15028. We have already discussed these challenges earlier. We stated that the professional corporation is not relieved of the notice requirement by the fact that attorney Hirsch, as an individual, did not give notice of the corporate claim. Also, Texas Lawyers' Insurance Exchange did not waive the lateness of notice under Policy No. 15028.

Point of Error No. Five is overruled.

The trial court judgment is affirmed.