139 F.Supp.2d 827 (2001)
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff,
v.
Mark A. WILLIS, Defendant.
Equalnet Communications Corporation F/K/A Equalnet Holding Corporation, Plaintiff in Intervention,
v.
National Union Fire Insurance Company Of Pittsburgh, Pa., Defendant in Intervention.
No. CIV. A. H-00-4205.
United States District Court, S.D. Texas.
April 24, 2001.
*828 Jeffrey Roger Parsons, Beirne Maynard & Parsons, Houston, David A Clark, Beirne Maynard & Parsons, Houston, TX, for National Union Fire Insurance Company of Pittsburgh PA, plaintiffs.
James Harrison Miller, Attorney at Law, Houston, TX, for Equalnet Communications Corp, intervenor-plaintiffs.
John Zavitsanos, Ahmad & Zavitsanos, Houston, TX, for Mark A Willis, defendants.
Jeffrey Roger Parsons, Beirne Maynard & Parsons, David A Clark, Beirne Maynard & Parsons, Houston, for National Union Fire Insurance Company of Pittsburgh PA, intervenor-defendants.

MEMORANDUM AND ORDER
CRONE, United States Magistrate Judge.
Pending before the court are National Union Fire Insurance Company of Pittsburgh, Pennsylvania's ("National Union") Motion to Dismiss Counterclaim under Rule 12(b)(6)(# 9), National Union's Motion for Judgment on the Pleadings (# 10), and Mark A. Willis's ("Willis") Cross-Motion for Partial Summary Judgment (# 26). Having reviewed the pending motions, the submissions of the parties, the pleadings, the petitions in the underlying lawsuit, and the applicable law, the court is of the opinion that National Union's Motion to Dismiss Counterclaim and Motion for Judgment on the Pleadings should be granted and that Willis's Cross-Motion for Partial Summary Judgment should be denied.

I. Background

In this declaratory judgment action, Plaintiff National Union seeks a declaration that Defendant Willis, an officer of Defendant EqualNet Communications Corporation ("EqualNet"), is not entitled to coverage under any of three directors, officers, and corporate liability insurance policies issued to EqualNet. These policies encompass the time periods March 8, 1998  March 9, 1999 ("1998 policy"); March 8, 1999  March 8, 2000 ("1999 policy"); and March 8, 2000  March 8, 2001 ("2000 policy"). In his counterclaim, Willis alleges that National Union has breached the terms of the insurance policy as well as its duty of good faith and fair dealing by failing to defend and indemnify him. National Union asserts that no coverage exists because Willis failed to give timely notification of a lawsuit brought against him in 1998. Willis contends, however, that he had no duty to notify National Union until the petition was amended in 2000 to add an additional claim and that he is entitled to coverage under the 2000 policy.
On September 21, 1998, CyberServe, Inc. ("CyberServe"), WSHS Enterprises, Inc., and William Stuart (collectively "the CyberServe plaintiffs") filed Cause No. 98-45115, styled CyberServe, Inc., WSHS Enterprises, Inc. and William Stuart v. EqualNet Communications Corp. (f/k/a EqualNet Holding Corp.), Willis Group L.L.C., Mark A. Willis and Netco Acquisition L.L.C., in the 215th District Court of Harris County, Texas. The CyberServe plaintiffs' allegations relate to business transactions and contractual agreements between the parties and initially asserted claims against Willis for fraud, fraud in the inducement, statutory fraud in a stock transaction, tortious interference with contract, and conspiracy. In addition to the causes of action listed above, the petition alleged claims against EqualNet and the Willis Group for breach of contract and quantum meruit. In March 2000, after amending their petition several times, the CyberServe plaintiffs filed their fourth amended petition adding a claim against Willis, the Willis Group, and EqualNet for negligent misrepresentation, which appears to be based on the same alleged *829 misrepresentations underlying their fraud, fraudulent inducement, and statutory fraud claims.
It is undisputed that neither Willis nor EqualNet notified National Union of the CyberServe lawsuit during the 1998 policy period. In fact, EqualNet first notified National Union of the lawsuit by form dated February 29, 2000, and Willis first provided notice of the lawsuit by letter dated May 11, 2000. In a letter dated June 9, 2000, National Union denied coverage and declined to advance defense costs to Willis "[b]ecause the claims asserted against Mr. Willis were not timely reported to National Union in accordance with paragraph 7 of the policies."
Willis maintains that he was not required to give notice of the lawsuit until a claim that was covered by the terms of the policy was asserted against him, which he contends did not occur until the fourth amended petition, alleging a claim for negligent misrepresentation, was filed in March 2000. According to Willis, prior to the fourth amended petition, the only claims asserted against him were intentional torts, which he argues fall within the policy exclusion for claims "arising out of, based upon, or attributable to the committing in fact of any criminal or deliberate fraudulent act." Thus, Willis posits that his May 11, 2000, notification of National Union was timely to trigger coverage under the 2000 policy.

II. Relevant Policy Provisions

Although they relate to different policy periods, the operative language of the three policies is virtually identical. The policies provide insurance coverage for corporate directors and officers of EqualNet, including Willis, as described below:

1. INSURING AGREEMENTS

COVERAGE A: DIRECTORS AND OFFICERS INSURANCE
This policy shall pay the Loss of each and every Director or Officer of the Company arising from a Claim first made against the Directors or Officers during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, except when and to the extent that the Company has indemnified the Directors or Officers. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.
With respect to individual directors and officers, "Wrongful Act" is defined as:
any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Directors or Officers of the Company in their respective capacities as such, or any matter claimed against them solely by reason of their status as Directors or Officers of the Company, or any matter claimed against them arising out of their serving as a director, officer, trustee, or governor of an Outside Entity in such capacities, but only if such service is at the specific written request or direction of the Company.
"Claim" is defined as:
(1) a written demand for monetary or non-monetary relief; or
(2) a civil, criminal, or administrative proceeding for monetary or nonmonetary relief which is commenced by:
(i) service of a complaint or similar pleading; or
(ii) return of an indictment (in the case of a criminal proceeding); or

*830 (iii) receipt or filing of a notice of charges.
Under the policies, the insurer does not assume a duty to defend and is only obligated to advance defense costs:
Under both Coverage A and Coverage B of this policy, except as hereinafter stated, the Insurer shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss. The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.
The cover sheet of the policy also cautions:
NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.
The notice provisions of the policies state the following:

7. NOTICE/CLAIM REPORTING PROVISIONS
Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.
(a) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:
(1) any time during the Policy Period or during the Discovery Period (if applicable); or
(2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.
(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.
(c) If during the Policy Period or during the Discovery Period (if applicable) *831 the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons, and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.
The cover sheet further warns:
NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.
Exclusions to policy coverage include:
The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;
(b) arising out of, based upon or attributable to: (1) profits in fact made from the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law; or (2) payments to an Insured of any remuneration without the previous approval of the stockholders of the Company, which payment without such previous approval shall be held to have been illegal;
(c) arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act;
The Wrongful Act of a Director or Officer shall not be imputed to any other Director or Officer for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).
(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;
(e) alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation. ...

III. Analysis

The policies in question are "claims-made" policies as opposed to the more customary "occurrence" policies. *832 See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 658-59 (5th Cir.1999); RTC v. Ayo, 31 F.3d 285, 288 (5th Cir.1994). "Under claims made policies, the mere fact that an `act, error, or omission' occurs during the policy period is not sufficient to trigger insurance coverage." Id. (citing FDIC v. Mijalis, 15 F.3d 1314, 1330 (5th Cir.1994)). Instead, in order to invoke coverage under such policies, a claim must be made against the insured during the policy period and the insured must notify the insurer of the claim during the same period. See Matador Petroleum Corp., 174 F.3d at 659 & n. 2; Ayo, 31 F.3d at 288. Unlike an "occurrence" policy, in a "claims-made" policy, "notice itself constitutes the event that triggers coverage." Matador Petroleum Corp., 174 F.3d at 659 (citing Mijalis, 15 F.3d at 1330).
Courts strictly interpret notice provisions in a "claims-made" policy. See id.; accord FDIC v. Booth, 82 F.3d 670, 678 (5th Cir.1996); Ayo, 31 F.3d at 289. Thus, in contrast to an "occurrence" policy, an insurer may deny coverage for untimely notice under a "claims-made" policy without a showing of prejudice. See Matador Petroleum Corp., 174 F.3d at 659 (citing Komatsu v. United States Fire Ins. Co., 806 S.W.2d 603, 607 (Tex.App.  Fort Worth 1991, writ denied)); see Hirsch v. Texas Lawyers' Ins. Exch., 808 S.W.2d 561, 562 (Tex.App.  El Paso 1991, writ denied). As the Fifth Circuit explained in Ayo:
The notice requirements in claims made policies allow the insurer to "close its books" on a policy at its expiration and therefore "attain a level of predictability unattainable under standard occurrence policies." Insurance companies may limit their liability through clear and unambiguous notice provisions, and impose any reasonable conditions they wish upon the insureds under the contract. The purpose of the reporting requirement is to define the scope of coverage by providing a certain date after which an insurer knows it is no longer liable under the policy, and for this reason such reporting requirements are strictly construed.
31 F.3d at 289 (citations omitted).
"Claims-made" policies often extend coverage to potential future claims about which the insurer is notified during the policy period. See Booth, 82 F.3d at 677-78; Ayo, 31 F.3d at 290-91; McCullough v. Fidelity & Deposit Company, 2 F.3d 110, 112-13 (5th Cir.1993); FDIC v. Barham, 995 F.2d 600, 605 (5th Cir.1993). The Fifth Circuit has interpreted such provisions as requiring the insured to give notice to the insurer of specified wrongful acts of officers and directors rather than generalized allegations of wrongdoing or other adverse information. See Booth, 82 F.3d at 677-78; Ayo, 31 F.3d at 290-91; McCullough, 2 F.3d at 112-13; Barham, 995 F.2d at 605. Under this type of policy, "the notice requirement actually serves to aid the insured by extending claims-made coverage beyond the policy period." Booth, 82 F.3d at 678 (emphasis in original) (citing Barham, 995 F.2d at 605 n. 9).
Willis argues that he was not obligated to notify National Union of the CyberServe lawsuit until a claim covered by the policy was asserted. He contends that prior to the fourth amended petition, which alleges a cause of action for negligent misrepresentation, the claims alleged in the prior petitions all fell within the "deliberate fraudulent act" exclusion of the policies. Fifth Circuit precedent supports the notion that for a claim or potential claim to trigger the notice requirement of a "claims-made" policy, it must relate to a type of loss covered by the policy. See Mijalis, 15 F.3d at 1333-34; MGIC Indem. Corp. v. Central Bank, 838 F.2d 1382, *833 1388 (5th Cir.1988). In Mijalis, the FDIC warned in a letter to a bank in precarious financial condition that "[s]hould you not act in good faith, recommendation of civil money penalties will be reconsidered." 15 F.3d at 1333. The Fifth Circuit acknowledged that "a threat to recommend civil money penalties would appear to come within the definition of claim [it] settled upon in Barham." Id. The court declined, however, to decide whether the letter constituted a claim in conformity with Barham "because the insurance policies at issue exclude from definition of `Loss' any `fines or penalties imposed by law,'" noting that "the threatened `civil money penalties' are clearly excluded from coverage under the policies." Id. Hence, because civil money penalties were not insured losses under the policy, the Fifth Circuit found that the "letter in which the FDIC threatened to recommend those penalties could not have been a claim within the meaning of the policy." Id. at 1334. The court reasoned that "[i]t would be incongruous to hold that the threat of an uninsured loss could nevertheless constitute a claim within the meaning of that term as used in an insurance policy." Id.
The Fifth Circuit relied on its prior opinion in Central Bank, which holds that "a claim is indisputably made, at the latest, at the time a party files suit on a demand based on an act of a bank's directors or officers, which demand the bank has denied." Id. (citing Central Bank, 838 F.2d at 1388). The court continued, "`[t]his is so regardless of whether the party making the claim names the director or officer as a party, as long as it is clear to the bank that the claim is based upon an action by a director or officer that falls within the terms of the insurance contract.'" Id. (emphasis in original) (quoting Central Bank, 838 F.2d at 1388). Thus, it appears that Willis was not required to give notice to National Union of claims that were excluded from policy coverage as a condition precedent to subsequent coverage of claims that fall within the parameters of the policy.
National Union maintains, however, that the events described as the factual bases of CyberServe's original petition are arguably covered by the 1998 policy. Generally, under Texas law, for a duty to defend to arise, "the pleadings must allege a claim that is `potentially' covered by the applicable policy." Gulf States Ins. Co. v. Alamo Carriage Serv., 22 F.3d 88, 90 (5th Cir. 1994); see Enserch Corp. v. Shand Morahan & Co., 952 F.2d 1485, 1492 (5th Cir. 1992); Fidelity & Guar. Ins. Underwriters, Inc. v. McManus, 633 S.W.2d 787, 788 (Tex.1982). "`In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.'" American States Ins. Co. v. Bailey, 133 F.3d 363, 369 (5th Cir.1998) (quoting National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex.1997)); accord Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex.1997). The court must ascertain whether the facts, as alleged, fall within the policy's coverage. See Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 155 (Tex.App. Houston [1st Dist.] 1990, writ denied). In making this assessment, the court may not consider the truth or falsity of the allegations in the underlying pleadings. See Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir.1998); Enserch Corp., 952 F.2d at 1492 & n. 8; Argonaut Southwest Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex.1973); Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co., 852 S.W.2d 252, 255 (Tex.App.  Dallas 1993, writ denied). Instead, all the facts alleged in the third party's complaint are assumed to be true. See Houston Petroleum Co., 830 S.W.2d at 155.
*834 When applying this method of analysis to the facts and claims alleged in CyberServe's original petition, it appears that some of the causes of action asserted are potentially covered by the 1998 policy. The petition alleges, inter alia, that Willis made misrepresentations, omissions, and false promises to induce BlueGate to enter into the Merger Agreement and to induce BlueGate and Stuart to perform thereunder. The petition further asserts that "[t]hese representations and promises were false and were made either intentionally or recklessly without regard to their truth or falsity." CyberServe's petition also alleges that Willis made misrepresentations, omissions, and false promises to induce BlueGate to execute the Web Page Agreement and the Tri-Party Agreement, again asserting that "[t]hese representations and promises were false and were made either intentionally or recklessly without regard to their truth or falsity." In addition, the CyberServe plaintiffs maintain that Willis, without legal justification, "willfully and intentionally interfered with BlueGate's right to exercise the Lien pursuant to the terms of the Web Page Agreement." The original petition also alleges that Willis "agreed to participate in unlawful acts for the purposes of defrauding BlueGate and Stuart and tortiously interfering with BlueGate's right to exercise the Lien pursuant to the terms of the Web Page Agreement." Contrary to Willis's position, the "deliberate fraudulent act" exclusion does not necessarily remove these claims from the scope of the 1998 policy.
"Under Texas law, the maxims of contract interpretation regarding insurance policies operate squarely in favor of the insured." Lubbock County Hosp. Dist. v. National Union Fire Ins. Co., 143 F.3d 239, 242 (5th Cir.1998) (citing National Union Fire Ins. Co. v. Kasler Corp., 906 F.2d 196, 198 (5th Cir.1990)). The policy of construing language in an insurance policy strictly against the insurer and in favor of the insured is "especially strong when the court is dealing with exceptions and words of limitation." Blaylock v. American Guarantee Bank Liab. Ins. Co., 632 S.W.2d 719, 721 (Tex.1982); see National Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex.1991). Hence, in Texas, "[e]xceptions and limitations in an insurance policy are strictly construed against the insurer." Bailey, 133 F.3d at 369 (citing Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co., 681 S.W.2d 593, 596 (Tex.1984)); accord State Farm Fire & Cas. Ins. Co. v. Keegan, 209 F.3d 767, 769 (5th Cir.2000). "Insurance policies are ... strictly construed in favor of the insured in order to avoid exclusion of coverage." Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 729 (Tex.App.  Austin 2000, no pet. h.) (citing Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.1984)).
Here, the original petition in the CyberServe lawsuit alleges that Willis acted intentionally or recklessly when making certain misrepresentations and promises. The 1998 policy explicitly provides coverage to Willis for misstatements, misleading statements, omissions, and other wrongful acts. Although the policy excludes a "deliberate fraudulent act" from the scope of coverage, a "reckless" act is not necessarily the equivalent of a "deliberate" act, as specified in the exclusion. See generally Kawaauhau v. Geiger, 523 U.S. 57, 61-63, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Black's Law Dictionary defines "deliberate," inter alia, as "[w]illful rather than merely intentional"; "[f]ormed, arrived at, or determined upon as a result of careful thought and weighing of considerations"; "careful in considering the consequences of a step"; "not rash." BLACK'S LAW DICTIONARY 426-27 (6th ed.1980). In contrast, "reckless" is defined, inter alia, as "careless, heedless, inattentive; indifferent to consequences." Id. at 1270. Furthermore, *835 while tortious interference with contract may be deliberate or intentional, it is not necessarily fraudulent. See generally Wal-Mart Stores, Inc. v. Sturges, 44 Tex. Sup.Ct. J. 486, 2001 WL 228139, at *8, 16, ___ S.W.3d ___, ___ - ___ (Tex. Mar. 8, 2001); KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 129, at 992 (5th ed.1984). Therefore, the "deliberate fraudulent act" exclusion does not operate to exclude from the scope of the policy CyberServe's allegations that Willis tortiously interfered with BlueGate's rights or that he conspired to do so.
Therefore, when construing the insurance policy against exclusion of coverage, it does not appear that all the claims asserted against Willis in the original petition are excluded from the reach of the policy. At a minimum, it would seem that upon service of the original petition, Willis "became aware of ... circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds." Hence, in order to trigger the insurer's obligations for the advance of defense costs and indemnity, it was incumbent upon him to give written notice to National Union of the claims or potential claims as soon as practicable and within the policy period. Because he failed to do so, Willis cannot now look to the 1998 policy for coverage. In addition, Willis is foreclosed from relying on the 2000 policy, as the claims asserted in the fourth amended petition allege, arise out of, are based upon, or are attributable to a pending or prior litigation, or allege or derive from the same or essentially the same facts as alleged in such pending or prior litigation, and thus are expressly excluded from the coverage of the policy. Consequently, Willis is not entitled to the advance of defense costs or indemnity with respect to the pending state court litigation brought by the CyberServe plaintiffs. Furthermore, in the absence of policy coverage, Willis's claims for breach of contract and breach of the duty of good faith and fair dealing are without basis.

IV. Conclusion

By failing to provide National Union timely notice of the claims or potential claims asserted against him, Willis did not satisfy a condition precedent of the insurance policies at issue. He may not now look to National Union for the payment of any damages assessed against him or for costs incurred by him in connection with the underlying lawsuit. Accordingly, National Union's Motion to Dismiss Counterclaim and Motion for Judgment on the Pleadings are GRANTED, and Willis's Cross-Motion for Partial Summary Judgment is DENIED.
IT IS SO ORDERED.