FIRST PROFESSIONALS INSURANCE COMPANY, INC., Appellant,

v.

HEART & VASCULAR INSTITUTE OF TEXAS, Appellee.

No. 04–05–00028–CV.

Court of Appeals of Texas, San Antonio.

Oct. 5, 2005.

Rehearing Overruled Nov. 1, 2005.

From the 57th Judicial District Court, Bexar County, Texas, Trial Court No. 2004–CI–03755; Lori Massey, Judge Presiding.[1]

R. Brent Cooper, Diana L. Faust, Devon J. Singh, Cooper & Scully, P.C., Dallas,

Terri S. Harris, Ewbank & Byrom, P.C., Austin, for appellant.

George H. Spencer, Jr., Paul A. Fleck, Clemens & Spencer, P.C., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

The issue presented in this appeal is whether under a claims-made policy, timely notice of separate claims made against two physicians practicing in the same medical group · constituted timely notice of a claim against the group when: (1) the notice of claim forms identified the group as the insured; (2) the letters containing the claims against the two physicians were attached to the notice of claim forms; and (3) the letters stated that the claims were made for the medical care of the same decedent whose care was the basis of the claims against the two physicians and the group in a subsequent lawsuit. The trial court determined that the notice of the claims made against the physicians was sufficient notice of a claim against the group. We reverse the trial court's judgment, render judgment that Heart & Vascular Institute of Texas take nothing against First Professionals Insurance Company, Inc., and remand the cause to the trial court for further proceedings consistent with this opinion.

### BACKGROUND

Heart & Vascular purchased a claims-made policy from First Professionals cov-

---

1. The Honorable Janet Littlejohn presided over the summary judgment hearing and entered an order resolving all issues except the amount of attorney's fees to be awarded. The Honorable Lori Massey entered the final judgment after resolving the attorney's fees issue.

ering the policy period from April 1, 2002 to April 1, 2003. Heart & Vascular is listed as the first named insured, and various physicians were listed as additional insureds. The policy provided that a claim is made "on the date we receive, at our home office, your first written report to us of your receipt of written notice of a liability claim or intent to sue." In order for a claim to be covered, the claim "must be made for the first time during the policy period." In the definitions section of the policy, the term "you and your" are defined as referring to "the named individual or group." Coleman Company was designated as the sole agent to act on behalf of the insureds under the policy. The policy was serviced on behalf of First Professionals by American Physicians Management Consulting Insurance Services f/k/a American Physician Insurance Services ("APMC").

On March 3, 2003, Coleman received a claim from Heart & Vascular in the form of a 4590i letter dated February 27, 2003, notifying Dr. Stephen C. Carey of a health care liability insurance claim against him for the medical care of Kenneth MacIntyre, Deceased. On March 4, 2003, Coleman forwarded a notice of claim form to APMC listing Heart & Vascular as the insured and attaching a copy of the letter. Dr. Carey is listed as an additional insured under the policy.

On March 6, 2003, Coleman received an additional claim from Heart & Vascular in the form of a 4590i letter dated February 27, 2003, notifying Dr. Richard Wilks of a health care liability insurance claim against him for his medical care of the same decedent, Kenneth MacIntyre. On March 6, 2003, Coleman forwarded another notice of claim form to APMC, again listing Heart & Vascular as the insured and attaching a copy of the letter. Dr. Wilks is also listed as an additional insured

under the policy. In this second notice of claim form, Coleman included the following in the description of the occurrence: "THIS TIME THEY ARE NAMING A DIFF. DOCT (DR. RICHARD WILKS, M.D.)." Also, in the remarks, Coleman included the following: "THIS IS SECOND NOTICE FOR DIFF DOCTOR ON SAME DECEASED."

On March 19, 2003, Jan Jonas, an agent with Coleman, sent an e-mail to Barbara Kounelias, a representative of APMC, noting that Heart & Vascular wanted to know "if the Institute has been implicated by this claim in any way." Later that same day, Jonas forwarded the same e-mail request to Kounelias because she had not received a response. Kounelias responded that Mark Keeney was handling that claim and provided Jonas with Keeney's e-mail address. Jonas forwarded her e-mail request to Keeney. On March 20, 2003, Keeney responded that Kounelias was handling the claim. Jonas responded to Keeney, stating that Kounelias had provided his name as handling the claim.

On March 24, 2003, a lawsuit was filed for negligence in MacIntyre's medical care. Heart & Vascular is listed as a defendant with the notation that Dr. Carey is and was an agent, servant, and employee of Heart & Vascular. The body of the petition alleges various negligent actions by Dr. Carey and other defendants; however, no specific action by Heart & Vascular is listed.

On May 2, 2003, Vicky Gould, Vice–President of APMC, sent a letter to Heart & Vascular. In her letter, Gould stated that on May 2, 2003, Heart & Vascular reported that it was served with the March 24, 2003 lawsuit. Gould further stated that the First Professionals' policy was a claims-made policy, and Heart & Vascular

did not make the claim during the period in which coverage existed.

On February 23, 2004, Gould responded to an additional letter sent by Heart & Vascular's attorney. Gould's letter acknowledged that both Heart & Vascular and the individual physicians within the group were insureds under the policy. Gould concluded, however, that the group and the individual physicians are "treated as separate named insureds and the notice requirement under the policy applies to each named insured. Therefore, even though the two physicians timely gave notice of their claims under the policy, there is no policy language or case law that we are aware of which constitutes timely notice of [Heart & Vascular's] claim." Gould noted that Heart & Vascular declined to purchase tail endorsement or extended reporting endorsement at the end of the claims-made policy period.

On March 9, 2004, Heart & Vascular filed suit against First Professionals seeking a declaratory judgment that First Professionals had a duty to defend the claim against Heart & Vascular. First Professionals filed a counter-claim seeking a declaratory judgment that Heart & Vascular failed to notify First Professionals of the claim against it during the policy period.[2] The parties then filed competing motions for summary judgment. The trial court entered judgment in favor of Heart & Vascular, ordering First Professionals to defend Heart & Vascular in the lawsuit filed on March 24, 2003, and awarding Heart & Vascular attorneys' fees "in such amounts as are determined in further proceedings in this action." The trial court subsequently entered a final judgment after determining the amount of attorney's fees to be awarded to Heart & Vascular.

### STANDARD OF REVIEW

The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When competing motions for summary judgment are filed, and one is granted and the other denied, the reviewing court must review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997).

### INTERPRETATION OF INSURANCE POLICIES

 The general rules of contract construction govern insurance policy interpretation. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997); *General Agents Ins. Co. v. Arredondo,* 52 S.W.3d 762, 766 (Tex.App.-San Antonio 2001, pet. denied). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996); *see also Arredondo,* 52 S.W.3d at 766. A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Columbia Gas,* 940 S.W.2d at 589; *Arredondo,* 52 S.W.3d at 766. Conversely, if an insurance contract is subject to more than one reasonable interpretation, the contract is ambiguous and the interpretation that most favors coverage

---

**2.** First Professionals also asserted a cross-claim against Coleman and Jonas, asserting they were liable for Heart & Vascular's failure to purchase a tail policy. The final judgment dismissed all claims against Coleman and Jonas without prejudice.

for the insured will be adopted.[3] *McKee,* 943 S.W.2d at 458; *Arredondo,* 52 S.W.3d at 766. An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *McKee,* 943 S.W.2d at 458; *Arredondo,* 52 S.W.3d at 766.

The two primary types of insurance policies are claims-made policies and occurrence policies. The distinction between these two types of policies is explained as follows:

> The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to the policy language, regardless of when the occurrence took place.

*Hirsch v. Texas Lawyers' Ins. Exchange,* 808 S.W.2d 561, 563 (Tex.App.-El Paso 1991, writ denied). In sum, claims-made policies are reporting policies. *Id.* at 565 (quoting *Gulf Ins. Co. v. Dolan, Fertig and Curtis,* 433 So.2d 512 (Fla.1983)). If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay. *Id.*

▉ The policy in question is unambiguous in stating that coverage is provided when claims are "made for the first time during the policy period." The issue becomes whether Heart & Vascular made a claim during the policy period based on the

notices of claim filed on March 4, 2003, and March 6, 2003. Because the evidence regarding the notices that were sent to APMC is undisputed, the issue of whether a claim was timely made is a question of law. *See Employers Cas. Co. v. Glens Falls Ins. Co.,* 484 S.W.2d 570, 576 (Tex. 1972).

### ANALYSIS

The primary case relied upon by First Professionals is *Texas Medical Liability Trust v. Transportation Ins. Co.,* 143 S.W.3d 335 (Tex.App.-Dallas 2004, pet. filed). The analysis in that case is largely governed by the former article 4590i notice requirement.

In *Texas Medical Liability Trust,* TMLT insured the Medical & Surgical Clinic of Irving, P.A. and Dr. John Wollenman, a partner of the Clinic, under separate policies. *Id.* at 336. The policies were claims-made policies that expired on September 1, 1996. *Id.* On July 2, 1996, Dr. Wollenman received a 4590i notice letter informing him that claims were being considered against him for actions taken during the delivery of a child. *Id.* The letter made no mention of a possible claim against the Clinic. *Id.* A Clinic employee faxed the letter to TMLT on July 3, 1996. *Id.*

On May 28, 1999, notice of claim letters were sent to both Dr. Wollenman and the Clinic regarding the same claim. *Id.* The notice of claim letter sent to Dr. Wollenman was forwarded by a Clinic employee to TMLT. *Id.* The notice of claim letter sent to the Clinic was forwarded to Transportation Ins. Co., the Clinic's insurer on May 28, 1999. *Id.* After the lawsuit was

---

**3.** Heart & Vascular asserts in its brief that a general rule of construction is to construe the insurance policy against the insurance company and in favor of the insured and the existence of coverage. This rule of construc-

tion only applies, however, if the insurance contract is subject to more than one reasonable interpretation, meaning the contract is ambiguous.

settled, Transportation filed a lawsuit seeking a declaration that TMLT was liable for the Clinic's portion of the settlement. *Id.* at 336.

The Dallas court began its analysis by noting that article 4590i required a person asserting a health care liability claim to give notice to *each* physician or health care provider, including professional associations, against whom the claimant asserts liability. 143 S.W.3d at 337. Transportation asserted that the July 1996 letter constituted notice of a claim against the Clinic under the TMLT policy because the term "named insured" included proprietary members, like Dr. Wollenman, for whose acts the Clinic is vicariously liable. *Id.* at 338. The Dallas court rejected this argument because the petition was the first document alleging that the Clinic was vicariously liable for the actions of Dr. Wollenman, not the July 1996 notice letter. *Id.*

Transportation then sought to rely on article 1528f, section 24 of the Professional Associations Act to argue that the Clinic was automatically liable for the acts of Dr. Wollenman; therefore, notice of a claim against Dr. Wollenman is the same as notice of a claim against the Clinic. *Id.* The Dallas court rejected that argument relying on a case in which a plaintiff sought to use section 24 to extend the two year limitations provision for medical malpractice claims. *Id.* (citing *Durham Clinic, P.A. v. Barrett,* 107 S.W.3d 761, 764 (Tex.App.-Waco 2003, pet. denied)). The Dallas court noted that although section 24 allowed a claim to be brought against a dissolved association within three years, section 24 could not be used to extend the absolute two year limitations period for health care liability claims in article 4590i. *Id.* Similarly, the Dallas court reasoned that section 24 could not be used to circumvent article 4590i's requirement that

each health care provider receive notice of a claim. *Id.*

Transportation has filed a petition for review with the Texas Supreme Court. In its petition, Transportation argues that the receipt of a 4590i notice letter is unrelated to the submission of liability insurance claims. Transportation contends that the effect of the Dallas court's opinion is to require that a health care provider be in receipt of a 4590i notice letter before a claim can be made under a claims-made policy. Transportation also believes the Dallas court misunderstood its argument under article 1528f, section 24. Transportation contends that it was not asserting that section 24 "trumped" the 4590i notice requirement. Instead, Transportation asserts that "even if an association has not yet received a 4590i notice letter naming it as a potential defendant, if an association receives such a notice directed to one of its employees, that is sufficient to invoke coverage under its professional liability policy" because the professional association is statutorily liable for the medical malpractice of its employees. Transportation argues that by statute the Clinic was vicariously liable for Dr. Wollenman's actions even if the plaintiff did not make a direct assertion against the Clinic in the 4590i letter.

Heart & Vascular attempts to distinguish the Dallas court's decision in *Texas Medical Liability Trust* ("*TMLT*") on three primary grounds: (1) separate policies were issued for the physician and the Clinic in *TMLT,* while the instant case involves only one policy; (2) the notice/report in *TMLT* only referred to the physician while the notice of claim in the instant case named Heart & Vascular as the insured; and (3) the "Named Insured" in the policy in question in *TMLT* was limited to the Clinic and only covered individual physicians to the extent they were vicariously

liable for others. The Dallas court's opinion provides only the following portion of the definition of "Named Insured":

> *"Named Insured"* means the professional association, partnership or other physicians' [physicians] practice group so designated in the applicable Declarations Page *of this policy.* Any partner, shareholder, associate, officer, director or other *proprietary member* of such insured while acting within the scope of duties for such insured shall be included within the coverage afforded to the *Named Insured,* but only with respect to *vicarious liability* for acts or omissions of others in the practice of medicine. . . .

143 S.W.3d at 337 (emphasis in original). In applying the definition, Transportation argued that the term "includes proprietary members for whose acts the Clinic is vicariously liable." *Id.* at 338. The Dallas court, however, noted "it is the petition in the underlying medical malpractice action that first claimed the Clinic was vicariously liable for the actions of Dr. Wollenman, not the July, 1996 notice letter received by the Clinic." *Id.* Based on this statement, we do not believe that Heart & Vascular's reasons for distinguishing *TMLT* are convincing. The Dallas court was not focused on the fact that separate policies existed but on the fact that no claim against the Clinic was raised in the first letter. Similarly, the Dallas court was not focused on whether the Clinic's name appeared in the July 1996 letter but on whether a claim had been asserted against the Clinic.

Heart & Vascular further asserts that First Professionals was timely provided with all the necessary information, i.e.: "A claim was being made regarding the medical care given to Mr. MacIntyre by two physicians who were insureds under the policy and those two physicians and the Insured Doctors Group (which by law is vicariously liable for their acts and omissions) were looking to the Insurance Company to provide them with a defense and the coverage they had purchased." Heart & Vascular appears to be making an argument similar to the one made in *TMLT* based on article 1528f, section 24. Although article 1528f, section 24 may automatically impose vicarious liability on a professional association, reliance on section 24 to trigger coverage under a claims made policy ignores that the plaintiff must affirmatively seek to recover from the association before the association can have notice of a liability claim against it or notice of the plaintiff's intent to sue it. While we disagree with the Dallas court's implication in *TMLT* that the plaintiff's claim must be in the form of a 4590i notice letter (although it typically will be), case law is clear that vicarious liability is a separate theory of liability. *See, e.g., Puls v. Columbia Hosp. at Medical City Dallas Subsidiary, L.P.,* 92 S.W.3d 613, 618 (Tex. App.-Dallas 2002, pet. denied) (amended pleading alleged health care liability claim for vicarious liability for first time); *Robertson v. Church of God, Int'l,* 978 S.W.2d 120, 124 (Tex.App.-Tyler 1997, pet. denied) (noting pleading only alleged direct liability claim not claim for vicarious liability); *Wehmeyer v. O'Dell,* 856 S.W.2d 845, 847 (Tex.App.-Eastland 1993, writ denied) (noting plaintiff's trial pleadings contained no allegations of vicarious liability); *Griggs v. Capitol Mach. Works, Inc.,* 690 S.W.2d 287, 295 (Tex.App.-Austin 1985), *writ ref'd n.r.e.,* 701 S.W.2d 238 (Tex.1985) (noting that no pleading was filed suggesting any theory of vicarious liability); *Ramirez v. Arguindegui Oil Co.,* 562 S.W.2d 524, 526 (Tex.Civ.App.-San Antonio 1978, no writ) (noting that nothing in the petition could serve as basis for imposing vicarious liability on the defendant). Until the plaintiff asserts that theory of liability, there is no new claim or lawsuit "made against Heart

& Vascular Institute of Texas (T5266) as a result of the acts or omissions of the individual" physicians to which coverage extends under the policy. At that point, vicarious liability is only a "potential" claim which may be asserted against Heart & Vascular in the future.

Heart & Vascular relies heavily on the Texas Supreme Court's opinion in *Glens Falls*. In that case the question was whether written notice of a liability event under an occurrence policy inured to the benefit of the omnibus insureds. 484 S.W.2d at 574. The court noted that the purpose of the notice requirement, to enable an insurer to investigate while the matter is fresh in the minds of the witnesses, was served by the notice that was given. *Id.* The court held:

> We hold that the timely notice of the accident from its named insured complied with the contract provision of the policy and the purpose to be served by such provision, and that another notice of the same accident was not required of the omnibus insureds. To hold otherwise, as contended by Glens Falls, would permit it to escape liability on a technicality which had no relation to its ability to promptly investigate the accident and prepare to defend and satisfy any claims then or thereafter asserted against the omnibus insureds.

*Id.* at 575.

 Although noting the distinctions that can be made between *Glens Falls* and the instant case, most notably that the policy in *Glens Falls* was an occurrence policy, Heart & Vascular argues that the distinctions are irrelevant to "the considerations which caused the Supreme Court to rule as it did." Heart & Vascular's argument continues, "Specifically, as suggested by the Supreme Court, an insurance company is not 'more notified' of a liability event involving the same claimant if the insurance company receives notice of those things a second, third, fourth, fifth, or sixth time." While this is a correct statement, it ignores that the "liability event" is not the triggering event for coverage under a claims-made policy. In a "claims made" policy, it is the making of the claim which is the event and peril being insured. *Hirsch,* 808 S.W.2d at 563. Accordingly, notice of the "liability event" is not relevant in determining whether coverage is triggered under a "claims made" policy. An insurance company could have received notice on six separate occasions of a liability event; however, until a claim is made based on that liability event, coverage is not triggered.

Finally, Heart & Vascular appears to contend that a claim against either the individual physicians or the group is sufficient to trigger the coverage for both. Heart & Vascular argues in its brief:

> The policy language continues by providing that "a claim is made on the date we [that is, the Insurance Company] receive, at our home office, your [that is, the named individual's (Drs.Carey/Wilks) **or** the group's (the Insured Doctors Group)] first written report to us of your [that is, the named individuals (Drs. Carey and Wilks) **or** the group's (the Insured Doctors Group)] receipt of written notice of a liability claim or intent to sue."

Again, Heart & Vascular seeks to focus on the fact that notice was provided of a liability "event" to extend coverage to Heart & Vascular; however, the policy focuses on liability "claims." Notice of a liability claim against Heart & Vascular cannot be provided until after the liability claim is made. The 4590i notice letters in this case did not assert a liability claim against Heart & Vascular; therefore, those notice letters could not provide writ-

14

ten notice of a liability claim or intent to sue Heart & Vascular.

Although we disagree with the Dallas court's implication that a claims-made policy can only be triggered by a 4590i notice letter, we agree that coverage of Heart & Vascular under First Professionals' policy could not be triggered until the plaintiffs asserted a claim against Heart & Vascular. The assertion of claims against the individual physicians in the Heart & Vascular group was not sufficient. As the El Paso court has explained:

> Although the notice requirements of a "claims made" policy appear to be harsh, the ability to make a choice based on need and financial ability is in the public interest. We must not convert claims-made policies to occurrence policies by judicial acts. The policies in question are **"clear, unequivocal and hence unambiguous"** and therefore its terms are enforceable.

*Hirsch,* 808 S.W.2d at 565.

### CONCLUSION

Because no claim was asserted against Heart & Vascular in the 4590i notice letters sent to Dr. Carey and Dr. Wilks, the notice provided to First Professionals regarding those letters was not notice of a claim against Heart & Vascular. Accordingly, the trial court erred in rendering judgment in favor of Heart & Vascular. The portion of the trial court's judgment relating to liability as between Heart & Vascular and First Professionals is reversed, judgment is rendered that Heart & Vascular take nothing against First Professionals, and the cause is remanded to the trial court for further proceedings consistent with this opinion on the issue of attorney's fees and costs.