# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00215-CR

**Salvador Simon, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-09-200600-A, HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In 2009, appellant Salvador Simon pleaded guilty to committing the misdemeanor offense of attempted possession of a controlled substance and was placed on community supervision for a period of two years. It is relevant to this appeal that Simon is an undocumented immigrant—he was arrested by Immigration and Customs Enforcement (ICE) in 2016, detained without bond as a result of his 2009 conviction, and subjected to removal proceedings.[1] Simon subsequently filed an application for writ of habeas corpus, challenging the legality of his 2009 conviction by asserting that he had received ineffective assistance of counsel prior to pleading guilty. Following a hearing, the district court denied relief. In two related points of error on appeal, Simon asserts that counsel had "affirmatively misadvised" him of the immigration consequences of his guilty plea and that Simon suffered prejudice as a result. We will affirm the order denying relief.

---

[1] *See* 8 U.S.C. §§ 1182(a)(2)(A)(i), 1227(a)(2)(B)(i).

# BACKGROUND

The record reflects that Simon had initially been charged with cocaine possession, a felony offense. According to the arresting officer's probable-cause affidavit, a copy of which was attached to Simon's habeas application, the cocaine had been found inside Simon's vehicle during a traffic stop, in a box of condoms located inside the glove box.

At the habeas hearing, Simon testified that prior to pleading guilty, he had spent approximately three to four minutes talking to his appointed trial counsel, Antonio Wehnes. According to Simon, Wehnes did not discuss the specific facts of the case with him. Simon also claimed that he had told Wehnes that the cocaine did not belong to him and that Wehnes "didn't ask [him] anymore questions" after that.

A copy of the transcript of the plea hearing was attached to Simon's habeas application. The record reflects that during that proceeding, the following occurred:

[The court]: Are you Salvador Simon, who is charged in this case?

[Simon]: Yes.

[The court]: Do you understand you're charged by indictment with possession of a controlled substance, cocaine, in an amount of less then one gram?

[Simon]: Yes.

. . . .

[The court]: The State has an election here?

[Prosecutor]: Yes, Your Honor. We'll proceed on a lesser included, a misdemeanor of attempted possession of a controlled substance.

[The court]: How do you plead to that lesser offense?

2

[Simon]:        Guilty.

. . . .

[The court]:    Is your guilty plea given freely and voluntarily?

[Simon]:        Yes.

[The court]:    Is it?

[Interpreter]:  He said yes.

[The court]:    Okay.  Do you understand the punishment range for a Class A misdemeanor offense as it is set out in State's Exhibit 1, the plea papers I'm showing you?

[Simon]:        Yes.

[The court]:    Do you understand all of your rights and the waivers of rights as set out in State's Exhibit 1?[2]

[Simon]:        No.

[Wehnes]:       Let me try, Your Honor.

(Whereupon a conversation in Spanish occurred between defense counsel and defendant.)[3]

[Simon]:        Yes.

[The court]:    Great.  You do understand all of your rights and waivers of rights as set out in State's Exhibit 1?

---

[2] State's Exhibit 1, the plea agreement, included the following admonishment: "If you are not a citizen of the United States of America, a plea of guilty or nolo contendere for this offense may result in your deportation, your exclusion from admission to this country, or your denial of naturalization under federal law."

[3] Simon testified that during this conversation, Wehnes had told him that "when the Judge asked me that I should say yes."  Simon also testified that Wehnes had told him "just to say yes to everything" that the court asked.

3

[Simon]:       Yes.

[The court]:   Did you go over these rights and the waivers of rights in State's Exhibit 1 with your attorney, Mr. Wehnes?

[Simon]:       Yes.

[The court]:   And that was in the Spanish language, correct?

[Simon]:       Yes.

[The court]:   Mr. Wehnes, you speak English and Spanish, correct?

[Wehnes]:      Yes, Judge.

. . . .

[The court]:   What is the recommendation?

[Prosecutor]:  One year of probation, two years of community supervision, pay all fines and complete 100 hours of community service restitution, restitution, pay $600 and complete counseling.

[The court]:   Mr. Simon, is that your understanding of the agreement you've reached in this case?

[Simon]:       Yes.

[The court]:   And have you discussed this agreement with Mr. Wehnes?

[Simon]:       Yes.

[The court]:   And you're satisfied with the recommendation he has provided you on this case?

[Simon]:       Yes.

[The court]:   And you've had sufficient time—well, he's had sufficient time to represent you?

[Simon]:       Yes.

[The court]:   I'll follow the recommendation. I find you guilty of attempted possession of a controlled substance, cocaine, in an amount of less than one gram, a Class A misdemeanor. Do you have anything else to say before we proceed with sentencing?

[Simon]:   Can I leave the country, because I was about to depart for—

[The court]:   Have you talked to him, Mr. Wehnes?

[Wehnes]:   Yes. I told him to come talk to me this weekend.

[Simon]:   Yeah, I'm going to talk to him.[4]

[The court]:   I sentence you to confinement in jail for one year and a $600 fine. The jail sentence is suspended. You're now placed on community supervision for two years. . . . Do you have any questions?

[Simon]:   No.

[The court]:   Okay. Good luck to you, Mr. Simon.

Simon testified that he had pleaded guilty because Wehnes had told him that if he pleaded guilty, then he "wouldn't go to jail." Simon further testified that Wehnes had told him "that it was all going to work out." On cross-examination, Simon acknowledged that at the time of his plea, he wanted to avoid a jail sentence. Additionally, when the State asked Simon if he was "happy that [he] got probation on this case on a misdemeanor instead of facing possible jail or a possible felony," Simon answered in the affirmative.

In an affidavit that was attached to his habeas application, Simon made additional allegations, including that Wehnes knew at the time of the plea hearing that Simon was from Mexico

---

[4] Simon testified that he did not talk with Wehnes that weekend or at any time following the plea hearing.

5

and was not a United States citizen; that Wehnes "never mentioned immigration consequences" and "never told [Simon] that [he] should consult with an immigration attorney"; and that "[n]either the judge nor [Wehnes] warned [Simon] that this would bring [him] immigration problems." Simon also asserted that Wehnes's failure to warn him of immigration consequences "led [him] to believe that this agreement would not affect [his] immigration possibilities."

Wehnes also testified at the habeas hearing. Wehnes recounted that when he was assigned to Simon's case, he knew that Simon was an undocumented immigrant and was aware of the collateral consequences that apply to undocumented immigrants who are convicted of drug crimes, including deportation. Although Wehnes did not have a specific recollection of the events that occurred at Simon's plea hearing, he was able to recall his standard procedure in similar plea-bargain cases at the time. Wehnes explained that he would review with his Spanish-speaking clients the rights and waivers specified in the plea paperwork, including the right to a jury trial and the admonishment to non-citizens of the potential immigration consequences of a guilty plea.[5] When asked about Simon's contentions that Wehnes had "told him to just say yes to whatever the Judge tells him," "didn't explain anything to him," and "didn't answer his questions," Wehnes testified, "No, that does not sound right to me." The State also elicited testimony from Wehnes that his standard practice included informing his non-citizen clients that drug convictions had definite immigration consequences:

> Q:    I want to ask you, the defendant says that you didn't go over any of his immigration consequences with him. I know you testified that you were

---

[5] *See supra* n.2.

aware at the time of 2009, that any kind of drug case was a permanent severe immigration consequence, correct?

A.    Correct.

Q.    Would you have gone over that with a client from Latin America?

A.    Well, in the plea forms, it says "may" have consequences. I always say, you are never going to be able to if it's a drug case. The "may" I feel is totally inappropriate in this type of plea.

Q.    So you tell clients that there will be immigration consequences?

A.    Totally.

At the conclusion of the habeas hearing, the district court denied relief and later made findings of fact and conclusions of law, including that Simon's testimony was not credible, that Wehnes's testimony was credible, and that counsel's performance was not deficient. This appeal followed.

## STANDARD OF REVIEW

In reviewing a trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion.[6] A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules or principles.[7] We are not to reverse the trial court's ruling unless

---

[6]  *See Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013); *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd).

[7]  *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *Ali*, 368 S.W.3d at 830.

7

the decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree."[8]

"An applicant for a post-conviction writ of habeas corpus bears the burden of proving his claim by a preponderance of the evidence."[9] In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of the witnesses."[10] Thus, we are to afford almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor.[11] We afford the same amount of deference to the trial court's application of the law to the facts, to the extent that the resolution of the ultimate question turns on an evaluation of credibility and demeanor.[12]

## ANALYSIS

In two related points of error, Simon asserts that he received ineffective assistance of counsel prior to pleading guilty and that the district court abused its discretion in denying habeas

---

[8] *Balderas v. State*, 517 S.W.3d 756, 798 (Tex. Crim. App. 2016); *Robisheaux v. State*, 483 S.W.3d 205, 217 (Tex. App.—Austin 2016, pet. ref'd).

[9] *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016) (citing *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002)).

[10] *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996); *Ali*, 368 S.W.3d at 830.

[11] *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011).

[12] *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

relief for that reason.[13]  The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.[14]  Under the first prong of the test, "a habeas applicant must show, by a preponderance of the evidence, that 'counsel's performance was deficient.'"[15] In other words, "[t]he applicant must show that counsel's performance failed to satisfy an objective standard of reasonableness under prevailing professional norms."[16]  "A reviewing court must assess reasonableness under the circumstances of the particular case 'viewed as of the time of counsel's conduct.'"[17]  "The presumption is that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"[18]  "An applicant who cannot overcome this presumption by a preponderance of the evidence will not succeed in his Sixth Amendment claim."[19]

Under the second prong of the *Strickland* test, the applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[20]  "A reasonable probability is a probability sufficient to undermine

---

[13]  *See* U.S. Const. amend. VI.

[14]  *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984)); *Ali*, 368 S.W.3d at 830.

[15]  *Ex parte Bowman*, 533 S.W.3d 337, 349 (Tex. Crim. App. 2017) (quoting *Strickland*, 466 U.S. at 687; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011)).

[16]  *Id*. at 349–50.

[17]  *Id*. at 350 (quoting *Strickland*, 466 U.S. at 688, 690).

[18]  *Id*.

[19]  *Id*.

[20]  *Strickland*, 466 U.S. at 694.

confidence in the outcome."[21]  "In the context of a collateral challenge to a guilty plea, the focus of the prejudice inquiry is on 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process,' and on whether a defendant has shown that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[22]

**Deficient performance**

Simon's specific complaint on appeal is that Wehnes "affirmatively misadvised" him of the immigration consequences of his guilty plea.  "In *Padilla v. Kentucky*, the Supreme Court held that the Sixth Amendment requires an attorney for a criminal defendant to advise his client of the risk of 'automatic' deportation as a consequence of a guilty plea."[23]  "But *Padilla* announced a new rule, so it does not apply retroactively to the collateral review of a state criminal conviction that was final when the *Padilla* opinion was issued in 2010."[24]  Because Simon's conviction became final in 2009, *Padilla* does not apply here.[25]

However, the Court of Criminal Appeals has recently held, consistent with United States Supreme Court precedent, that a defendant whose conviction became final prior to *Padilla* may nonetheless bring a claim that his trial counsel "affirmatively misadvised" him of the

[21]  *Id*.

[22]  *Torres*, 483 S.W.3d at 43 (quoting *Hill*, 474 U.S. at 59).

[23]  *State v. Guerrero*, 400 S.W.3d 576, 587 (Tex. Crim. App. 2013) (citing 559 U.S. 356, 367–68 (2010)).

[24]  *Id*. (citing *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013)).

[25]  *See De Los Reyes*, 392 S.W.3d at 679 (citing *Chaidez v. United States*, 568 U.S. 342, 358 (2013)).

immigration consequences of his guilty plea.[26]  In other words, even prior to *Padilla*, "when [an] attorney rendered immigration advice, which he was under no obligation to render, he had a duty to state the law correctly."[27]  Stating the law incorrectly, i.e., providing "affirmative misadvice," may give rise to a cognizable claim for ineffective assistance of counsel independent of *Padilla*.[28]

As an initial matter, the State argues that Simon waived his "affirmative misadvice" claim in the court below.  At the beginning of the habeas hearing, the State and the district court asked Simon to clarify the nature of his complaint.  The record reflects that the following occurred:

[State]:     I just wanted to clarify with the Applicant.  I believe that the two grounds that were raised in the writ was that trial counsel didn't explain immigration consequences and that trial counsel didn't talk about the possible illegal search [of Simon's vehicle[29]].

---

[26]  *See Ex parte Garcia*, 547 S.W.3d 228, 2018 Tex. Crim. App. LEXIS 132, at \*4–5 (Tex. Crim. App. May 9, 2018) (citing *Lee v. United States*, 137 S. Ct. 1958 (2017)).

[27]  *See id*.

[28]  *See id*. (citing *Ex parte Moussazadeh*, 361 S.W.3d 684, 691 (Tex. Crim. App. 2012); *State v. Recer*, 815 S.W.2d 730, 731 (Tex. Crim. App. 1991)).

[29]  In his habeas application and at the hearing, Simon also argued that counsel was ineffective for failing to file a motion to suppress the cocaine that was found in the vehicle's glove box following Simon's arrest.  *See Arizona v. Gant*, 556 U.S. 332, 351 (2009) (restricting scope of automobile searches incident to arrest to areas of vehicle that are "within reaching distance" of arrestee).  To the extent that Simon has carried forward this argument on appeal, we observe, as did the court below, that *Gant* was decided after Simon had pleaded guilty, and it is well established that counsel should not be declared ineffective when counsel's claimed error is based on unsettled law.  *See, e.g.*, *State v. Bennett*, 415 S.W.3d 867, 869 (Tex. Crim. App. 2013); *Ex parte Chandler*, 182 S.W.3d 350, 358–59 (Tex. Crim. App. 2005); *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim. App.1998); *see also Ex parte Martinez*, No. 03-15-00334-CR, 2016 Tex. App. LEXIS 9905, at \*8–9 (Tex. App.—Austin Aug. 31, 2016, no pet.) (mem. op., not designated for publication) ("Although '[i]gnorance of well-defined general laws, statutes and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel,' the 'specific legal proposition must be "well considered and clearly defined."'" (quoting *Chandler*, 182 S.W.3d

11

My understanding today is, that what we're really going to focus on is counsel's investigation or discussion of defenses and not whether or not he advised his client about immigration consequences. I just want to get that on the record. Is that true that that's the ground we are here for?

[Simon]: That's correct.

[State]: So it's not a *Padilla* claim? It's not an immigration claim anymore?

[The court]: So it has nothing to do with *Padilla*, particularly, with not so much the failure to go over with him immigration consequences. I think the record in that respect speaks for itself.

But with respect to any misadvice that was given to him that is not reflected in the record, is that something that you want to go over here?

[Simon]: Your Honor, really the only way immigration, which is a collateral consequence, plays into this is that that's the reason he is here. He waited seven years only because it was when immigration picked him up on a separate matter that it was put in his face that he had a drug conviction. So it's a permanent infirmity for immigration to have a drug crime. He can never immigrate and he is permanently barred from this country. So now that's a collateral consequence that Mr. Wehnes, because it was pre-*Padilla*, didn't have the duty to explain immigration consequences. But immigration does play into why he is here today.

[The court]: Okay. You can proceed how you would like to, and then I'll take up all of the issues as they arrive.

At no point during the habeas hearing did Simon argue that Wehnes had "affirmatively misadvised" him of the immigration consequences of his guilty plea. Additionally, at the conclusion of the hearing, the district court stated that although "the original writ was really about whether or not

_____

at 358)).

12

[Simon] was given immigration warnings and told of immigration consequences," the court was "not going to address that because you've withdrawn that issue." Simon did not object to the district court's decision. Accordingly, we agree with the State that Simon waived this issue in the court below.[30]

Moreover, even if the issue had been preserved, we could not conclude on this record that the district court abused its discretion in failing to find that Wehnes had "affirmatively misadvised" Simon. As discussed above, "affirmative misadvice" claims apply to cases in which counsel misstated the law.[31] The district court would not have abused its discretion in finding that Wehnes made no such misstatements, at least none that were reflected in the record. In contending that Wehnes had affirmatively misadvised him, Simon places significance on Wehnes's statement during the plea colloquy that he had told Simon "to come talk to [him] this weekend" in response to Simon asking the court if he could "leave the country." However, as the State observes, "it is not clear that this exchange had anything to do with immigration at all," as Simon may have been inquiring as to some matter other than immigration consequences, such as any travel restrictions that he might face while on probation. But even if Simon's question concerned the immigration

---

[30] See Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Ex parte Roldan*, 418 S.W.3d 143, 146 n.3 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

[31] See, e.g., *Lee*, 137 S. Ct. at 1963 (defendant "repeatedly asked [counsel] whether he would face deportation as a result of the criminal proceedings"; counsel advised defendant incorrectly that "he would not be deported as a result of pleading guilty"); *Garcia*, 2018 Tex. Crim. App. LEXIS 132, at *1 ("Garcia asked his attorney whether there would be adverse immigration consequences if he took the plea offer because he was a lawful permanent resident, and counsel responded that he 'would probably be okay' and that 'the charge would probably not result in deportation.'"); *Ex parte Arjona*, 402 S.W.3d 312, 316 (Tex. App.—Beaumont 2013, no pet.) (counsel "volunteered advice" to defendant on possible immigration consequences of pleading guilty).

13

consequences of his plea, it would not be outside the zone of reasonable disagreement for the district court to have found that the above exchange suggested, at most, a failure to advise Simon of immigration consequences. And again, any such failure would not have constituted ineffective assistance of counsel prior to *Padilla*.[32]

Simon also places significance on his testimony that Wehnes had told him, during the plea hearing, "that it was all going to work out." It would not be outside the zone of reasonable disagreement for the district court to have found that this statement was ambiguous and that Wehnes was referring to something other than immigration consequences, such as Simon receiving probation instead of a jail sentence if he pleaded guilty. Moreover, Wehnes testified that it was his standard practice in similar plea-bargain cases to review with his Spanish-speaking clients the rights and waivers specified in the plea paperwork, including the deportation consequences for non-citizens convicted of drug crimes. The district court would not have abused its discretion in finding that Wehnes had likely followed that practice in Simon's case and had warned him of the immigration consequences of his guilty plea. The district court found Wehnes's testimony credible and Simon's testimony not credible, and we are to defer to those credibility determinations. Additionally, we observe that in Simon's affidavit, he stated that Wehnes "never mentioned immigration consequences," which is contrary to Simon's claim that Wehnes had "affirmatively misadvised" him of those consequences. We conclude that the record supports a finding by the district court that Simon failed to prove by a preponderance of the evidence that Wehnes had "affirmatively

---

[32] *See De Los Reyes*, 392 S.W.3d at 679.

misadvised" him of the immigration consequences of his guilty plea, and the district court would not have abused its discretion in denying Simon's habeas application for that reason.[33]

**Prejudice**

The district court also would not have abused its discretion in finding that Simon had failed to prove prejudice. Again, "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[34] Stated another way, he "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."[35] "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."[36] "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."[37] Factors to consider in the analysis include "the evidence supporting an applicant's assertions, the likelihood

---

[33] *See Roldan*, 418 S.W.3d at 147–48; *see also Ex parte Brumant*, No. 14-15-00337-CR, 2015 Tex. App. LEXIS 10490, at *10–11 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, pet. ref'd) (mem. op., not designated for publication) (rejecting similar affirmative-misadvice claim); *Ex parte Tavakkoli*, No. 09-13-00082-CR, 2013 Tex. App. LEXIS 11989, at *18–20 (Tex. App.—Beaumont Sept. 25, 2013, pet. ref'd) (mem. op., not designated for publication) (same).

[34] *Lee*, 137 S. Ct. at 1965 (quoting *Hill*, 474 U.S. at 59).

[35] *Padilla*, 559 U.S. at 372 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000)).

[36] *Lee*, 137 S. Ct. 1967.

[37] *Id*.

15

of his success at trial, the risks the applicant would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments."[38]

Initially, we observe that the record reflects that Simon was an undocumented immigrant at the time of his plea hearing. Therefore, unlike the defendants in *Padilla* and *Lee*, who were lawful permanent residents at the time of their hearings and thus not subject to deportation until after they had pleaded guilty, Simon could have been deported even if he had gone to trial and been acquitted.[39] The district court would not have abused its discretion in finding that Simon's status as an undocumented immigrant who was already subject to removal made it less likely that the "prospect of removal" would "reasonably have affected his decision to . . . plead guilty."[40]

Moreover, it would not have been outside the zone of reasonable disagreement for the district court to have found that Simon's likelihood of success at trial was low. Although Simon claimed that the cocaine that was found in his vehicle did not belong to him, the arresting officer's probable-cause affidavit indicated that "Simon was the only occupant of the vehicle and had care, custody, and control of the vehicle" at the time the officer had found cocaine inside the glove box. Also, Simon had been charged with cocaine possession, a felony offense. If convicted, Simon would have faced up to two years in state jail and a $10,000 fine.[41] But because of the plea agreement, the

---

[38] *Torres*, 483 S.W.3d at 48.

[39] *See Guerrero*, 400 S.W.3d at 588–89 (concluding that even if defendant, an undocumented immigrant, had "gone to trial . . . and been acquitted[,] he would not have been transformed into a legal resident"; instead, [h]e could have been deported immediately after walking out of the criminal courthouse").

[40] *See id.* at 589.

[41] *See* Tex. Penal Code § 12.35.

charge was reduced to a misdemeanor and Simon was placed on community supervision instead of serving jail time. Simon testified at the habeas hearing that he wanted to avoid a jail sentence at the time he pleaded guilty, and when the State asked Simon if he was "happy that [he] got probation on this case on a misdemeanor instead of facing possible jail or a possible felony," Simon answered in the affirmative. Additionally, Wehnes testified that in his experience, at the time of Simon's plea hearing, immigration officials "were deporting people all the time when they reported to probation on a felony," but "if you were able to get out of the Courthouse with a misdemeanor, probation would not report you to immigration." Thus, the district court would not have abused its discretion in finding that in addition to avoiding jail time, another benefit of the plea bargain was the possibility that Simon would not be reported to immigration officials at that time.

In summary, as an undocumented immigrant, Simon was already subject to deportation even before he pleaded guilty, which would support a finding by the district court that the risk of deportation would not reasonably have affected Simon's plea decision. The record would also support findings by the district court that Simon's likelihood of success at trial was low, that the risks Simon would have faced at trial were significant, and that the benefits Simon received from the plea bargain were substantial. Accordingly, it would not have been outside the zone of reasonable disagreement for the district court to have found that Simon failed to prove, by a preponderance of the evidence, that there was a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.[42] For this and

---

[42] *See Torres*, 483 S.W.3d at 49–51; *Guerrero*, 400 S.W.3d at 588–89; *Ex parte Luna*, 401 S.W.3d 329, 335–36 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Ali*, 368 S.W.3d at 840–41.

other reasons discussed above, we cannot conclude on this record that the district court abused its discretion in denying Simon's application for writ of habeas corpus.

We overrule Simon's first and second points of error.

**CONCLUSION**

We affirm the district court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Goodwin

Affirmed

Filed:   July 19, 2018

Do Not Publish